**INTERCONTINENTAL FIBRES, INC.**

v.

**UNITED STATES.**

C.D. 4617; Court No. 70/41971–2919.

United States Customs Court.

Dec. 3, 1975.

Rode & Qualey, New York City (Ellsworth F. Qualey and Peter Jay Baskin, New York City, of counsel), for plaintiff.

Rex E. Lee, Asst. Atty. Gen. (Herbert P. Larsen, New York City, trial atty.), for defendant.

WATSON, Judge:

This case raises the issue of whether certain imported merchandise was properly classified as yarns of man-made fibers with twist of not over 20 turns per inch pursuant to item 310.01 of the Tariff Schedules of the United States, as modified by T.D. 68–9, and assessed with duty at the rate of 20¢ per pound.[1] Plaintiff claims the proper classification should be as grouped filaments within the meaning of item 309.31 of the TSUS, as modified by T.D. 68–9, dutiable at the rate of 16.5% ad valorem.[2]

The outcome of this case depends on whether the imported merchandise consists of grouped filaments as defined in headnote 3(e) of schedule 3, part 1, sub-

---

1. Item 310.01 of the Tariff Schedules of the United States, as modified by T.D. 68–9:

Yarns of man-made fibers:

\* \* \* \* \* \* \* \*

Other:
  Wholly of continuous man-made fibers (multifilament yarns):
    Singles:
      With twist but not over 20 turns per inch:
        Valued not over $1 per pound ... \* \* \*

2. Item 309.31 of the Tariff Schedules of the United States, as modified by T.D. 68–9:

Grouped filaments and strips (in continuous form), whether known as tow, yarns, or by any other name:
  Wholly of grouped filaments (except laminated filaments and plexiform filaments):

\* \* \* \* \* \* \* \*

  Other:

\* \* \* \* \* \* \* \*

    Valued over 80 cents per pound ..... \* \* \*

part E of the TSUS.[3] That headnote defines grouped filaments as embracing two or more filaments grouped together with the filaments *substantially parallel and not twisted.* The headnote goes on to exclude grouped filaments which have been subjected to processes such as twisting and untwisting and which are useable as yarns.

The imported merchandise has a measurable amount of twist known as producer's twist which is imparted to the filaments in the stage of their production known as the drawing operation. The original "undrawn" yarn is produced by extruding molten polyester material through the holes in spinneret plates. The resulting individual filaments are cooled and bundled together on packages called spinning spools. At a later time the "undrawn" yarn is drawn or stretched by means of a machine called a "drawtwister". The yarn runs off one end of the spinning spool, passes between two rollers running at different speeds, which stretches it, and then goes to a winding mechanism which uses a moving ring to wind the yarn around a spindle-driven bobbin. It is the twist which is imparted in the course of winding the yarn on the bobbin which is at the core of the dispute herein.

The defendant, whose customs laboratory measured producer's twist of 0.4 turns per inch in the merchandise of entry 106405 and 0.3 turns per inch in the merchandise of entry 106359, takes the position that the filaments in this yarn cannot be considered substantially parallel and not twisted within the meaning of the aforementioned headnote 3(e). Plaintiff takes the position that producer's twist is a slight twist and it was not the intention of Congress to exclude merchandise such as this from classification as grouped filaments.

Plaintiff stresses a sentence which appears at page 50 in the Tariff Classification Study, Schedule 3, which indicates that the language of headnote 3(e) " * * * is not intended to preclude the classification under these provisions of grouped filaments with a slight twist unintentionally introduced in the process of winding such filaments on holders."

Although the language of headnote 3(e) is not so suggestive of alternative meanings as would ordinarily cause me to consider it ambiguous, I do believe an examination of legislative history is warranted, if only to explore the possibility that the legislative history reveals an intention which is not clearly expressed in the statutory headnote. On its face, the headnote in question would appear to exclude this merchandise from the ambit of grouped filaments. The filaments of this merchandise are twisted and are not substantially parallel within my understanding of that phrase. Within a length of two or three inches these filaments make one full turn about one another. They possess a measurable amount of twist, whose presence is recognizable and is generally denominated producer's twist. The departure of these filaments from the state of being parallel to one another is too pronounced to let them be considered substantially parallel. I understand the phrase "substantially parallel" to mean virtually parallel.

The parallelism required has to be considered in accordance with the scale of the product involved. Since great lengths of yarn are involved here, the parallelism requirement should be construed in a relatively extended length. The combined effect of a requirement of parallelism and a ban on twist leads irresistibly to a view of filaments in a form which does not vary significantly from the parallel "in the long run".

**3.** For the purposes of this subpart—
　　　*　　*　　*　　*　　*　　*
(e) the term *"grouped filaments and strips"* embraces two or more filaments or strips, as defined in (a), (b), (c), and (d) of this headnote, grouped together with the filaments or strips, substantially parallel and not twisted, but the term does not include grouped filaments which have been subjected to processes such as twisting and untwisting, false twisting, crimping, and curling, and which are useable as yarns.

Nevertheless, these considerations of plain meaning would have to be modified if the legislative history cited by plaintiff revealed an intent of the legislature to treat the filaments of yarn containing producer's twist as consisting of grouped filaments substantially parallel and not twisted. However, when examined in context, the tariff classification material relied on by plaintiff does not support so significant a modification of the statutory meaning. This is so principally because it is not at all clear that the subject of the explanatory language is yarn possessing producer's twist.

■ In order for a single explanatory sentence in the Tariff Classification Study to serve as a ground for including an important type of yarn in a provision where it does not fit the literal statutory definition, I would require the sentence to reveal an unmistakably clear intention. Yet, such an intention is not manifest at all. The question is not whether the instant importation can be said to have a "slight" twist or whether the twist was imparted intentionally or unintentionally. The object of our concentration or study is not to give the words "slight" or "unintentionally" the same exhaustive analysis they would receive if they were statutory language. The question herein and the focus of our attention is simply whether or not the language under discussion was clearly referring to producer's twist yarn. I think not.

The context contains no reference whatsoever to producer's twist yarn or any specific indication that the process of winding filaments on holders referred to in the explanatory sentence is the winding which comes at the end of the drawtwister production of yarn.

The distinct and more likely possibility exists that the reference is to the twist found in so-called "zero-twist" yarns. These are yarns produced by means of draw-winder machines and possess an almost infinitesimal amount of twist which can be expressed in thousandths of a turn per inch. A strong awareness of zero-twist yarn is indicated in the context of the explanatory notes. A further possibility is that the language under discussion refers in a general way to so-called "over-end" twist which is the unavoidable twist resulting when yarn is pulled off the end of a holder or creel package. This is the origin of the infinitesimal twist present in the "zero-twist" yarn and is also imparted when yarn is repackaged from one holder to another, a not uncommon procedure. Over-end twist is far less substantial than producer's twist and can truly be said to be "slight" and "unintentional".

It is not necessary, in any event, to fix with certainty what exactly the purpose of the reference to "slight" and "unintentional" twist was, so long as it does not clearly refer to producer's twist yarn.

■ Since I do not detect in the explanatory notes a clear intention to treat producer's twist yarn as grouped filaments which are substantially parallel and not twisted within the meaning of headnote 3(e), I see no need to decide whether the twist in the producer's twist yarn is "unintentional". This yarn is not substantially parallel and it is twisted; therefore it cannot be considered to be grouped filaments within the meaning of item 309.31. *E. Dillingham, Inc. v. United States,* 328 F.Supp. 1392, 70 Cust.Ct. 43, C.D. 4406 (1973).

I should note, however, that I would have great difficulty in finding a lack of intention in the introduction of a degree of twist which appears to serve a useful purpose,[4] is the result of a particular choice of machinery, is variable within certain limits and is in marked contrast to the indisputably unintentional type of twist known as over-end twist.

For the foregoing reasons, plaintiff's protest must be overruled and judgment granted for the defendant. Judgment will be entered accordingly.

---

4. I conclude from the evidence that the twist in producer's twist yarn serves to hold the filaments together.