**INTERCONTINENTAL FIBRES, INC., Appellant,**

v.

**The UNITED STATES, Appellee.**

**Customs Appeal No. 76–7.**

United States Court of Customs and Patent Appeals.

Dec. 9, 1976.

Rode & Qualey, New York City, attys. of record, for appellant; Peter J. Baskin and Ellsworth F. Qualey, New York City, of counsel.

Rex E. Lee, Asst. Atty. Gen., Washington, D. C., David M. Cohen, Chief, Customs Section, Herbert P. Larsen, attys., New York City, of record, for appellee.

MARKEY, Chief Judge.

This is an appeal from the judgment of the United States Customs Court, 75 Cust.Ct. 135, C.D. 4617, 406 F.Supp. 1221 (1975), denying Intercontinental's claim for classification of certain imported polyester yarn within item 309.31, Tariff Schedules of the United States (TSUS), as "Grouped filaments" rather than as "Yarns * * * With twist" under item 310.01. We affirm.

The imported polyester yarns had their genesis as extruded polyester filaments. Those filaments became yarn when cooled, spin finished,* and wound in a bundle on a spool. At that point in the process, the yarns are in the "undrawn" or unstretched state. After conditioning, the imported yarns were further processed in a machine called a "draw twister." The draw twister draws or stretches the yarn and winds it onto a holder. In winding, the draw twister gives the yarn a twist, called "producer's twist" in the trade. The twist can be controlled in direction and degree within the mechanical limits of the machine. The imported yarn exhibited a producer's twist of 0.3 to 0.4 turns per inch.

Another machine, called the "draw winder," operates like the draw twister, but the yarn produced with a draw winder has significantly less twist. Although there is a twist in yarn produced with a draw winder, it is so slight that the trade refers to such yarn as "zero twist" yarn.

The classification of the yarn, sustained by the Customs Court, was under item 310.-01, TSUS:

Yarns of man-made fibers:

   *     *     *     *     *     *

Other:
Wholly of continuous man-made fibers (multifilament yarns):
Singles:
With twist but not over 20 turns per inch:
Valued not over $1 per pound . . . . . . . .

Intercontinental urges that the proper classification should be under item 309.31, TSUS:

Grouped filaments and strips (in continuous form), whether known as tow, yarns, or by any other name:
Wholly of grouped filaments (except laminated filaments and plexiform filaments):

   *     *     *     *     *     *

Other:

   *     *     *     *     *     *

Valued over 80 cents per pound . . . . . .

Pertinent to Intercontinental's claim under item 309.31, is headnote 3(e), Schedule 3, Part 1E:

*Subpart E headnotes:*

   *     *     *     *     *     *

3. For the purposes of this subpart—

   *     *     *     *     *     *

(e) the term *"grouped filaments and strips"* embraces two or more filaments or strips, as defined in (a), (b), (c), and (d) of this headnote, grouped together with the filaments or strips substantially parallel and not twisted, but the term does not include grouped filaments which have been subjected to processes such as twisting and untwisting, false twisting, crimping, and curling, and which are useable as yarns;

It is undisputed that the imported merchandise is yarn and that it exhibits a measurable degree of twist. The dispositive question is whether the imported yarns are

---

* From the testimony it appears that "spin finish" related to chemical treatment of the filaments prior to the drawing process. Appellant's and appellee's witnesses agreed that spin finishing lubricates, though they disagreed as to whether it holds the filaments together. The Customs Court made no factual determination of that disagreement.

"Yarns * * * With twist" or "Grouped filaments" within the meaning of the tariff schedules.

In confronting the definition of "grouped filaments" in headnote 3(e) as "not twisted" and as not including grouped filaments subjected to twisting, Intercontinental points to a portion of the *Tariff Classification Study* (TCS) as indicating as intent of Congress not to exclude yarns having a slight, unintentional twist from that definition. Intercontinental further argues that to be classified as "Yarns * * * With twist" under item 310.01, the yarns must have a commercially significant twist, i. e., more than 2 turns per inch, whereas the twist exhibited by the imported yarn is slight (0.3–0.4 turns per inch), unintentional (inherent result of the draw twister), and without useful purpose.

## OPINION

■ We look first to the literal terms of the statute. *United States v. Dodge & Olcott, Inc.,* 47 CCPA 100, C.A.D. 737 (1960). Item 310.01 refers simply to multifilament yarns "with twist," no minimum degree of twist being specified. Item 309.31 refers simply to "Grouped filaments" and neither specifically includes nor excludes grouped filaments with twist. Headnote 3(e), however, in clear and unambiguous language, excludes "grouped filaments which have been subjected to processes such as twisting" from the embracement of "Grouped filaments." The literal terms of the statutory provisions, therefore, support the sustained classification and preclude classification of the imported yarn as "Group filaments" under item 309.31. Unless it be shown that a literal construction leads to an anomaly or is contrary to Congressional intent, *United States v. Best Foods, Inc.,* 47 CCPA 163, C.A.D. 751 (1960), the statutory language must govern. We find no anomaly herein or contrary intent of Congress.

The following excerpt from the TCS, Schedule 3, at 50 (1960).

> The grouped filaments covered include "tow", "yarn", or other filaments, so long as the filaments in the group are "sub-stantially parallel and not twisted". *This language, of course, is not intended to preclude the classification under these provisions of grouped filaments with a slight twist unintentionally introduced in the process of winding such filaments on holders.* [Emphasis added.]

is said by Intercontinental to indicate that Congress did not intend to exclude from item 309.31 yarns having a slight, unintentionally introduced twist. The Government argues that the quoted excerpt, when read in context, evidences at most an intent of Congress not to exclude "zero twist" yarns. The Customs Court found that zero twist yarns had an infinitesimal twist, on the order of thousandths of a turn per inch. The Customs Court agreed that the TCS excerpt probably referred to zero twist yarns. In any event, the Customs Court held that the TCS could not be used to override the express literal terms of the statute unless it clearly evidenced an unequivocal Congressional intent so to do.

■ We have held that expressions in the TCS alone do not overcome the clear meaning of the statute. *Great Western Sugar Co. v. United States,* 59 CCPA 56, C.A.D. 1038, 452 F.2d 1394 (1972); *American Customs Brokg. Co. v. United States,* 58 CCPA 45, C.A.D. 1002, 433 F.2d 1340 (1970). Moreover, we detect no irreconcilable conflict between the statute and the TCS in the case before us. The TCS excerpt relied upon by Intercontinental recognizes a potential for application of the *de minimis* rule. It does not signal an intent to define "slight" as "less than 0.5 turns per inch" or to define "unintentionally introduced" so broadly as to encompass a twist produced by a machine known to result in varying degrees of twist depending on its speed of operation. In our view the admitted twist in the imported yarn is more than *de minimis.* When the quoted TCS excerpt is read and all of the TCS relating to the subject merchandise, it is clear that appellant's reliance on the excerpt is misplaced. We agree, therefore, with the Customs Court that the imported yarn "cannot be considered to be grouped filaments within the

meaning of item 309.31." (75 Cust.Ct. at
——, 406 F.Supp. at 1224.) See also, *E. Dillingham, Inc. v. United States,* 70 Cust.Ct. 43, C.D. 4406 (1973).

Intercontinental's contention that the "twist" referred to in item 310.01 relates only to twist of "commercial significance" similarly founders on the literal wording of the statute. Though the tariff statute is drawn "in the language of commerce, which is presumptively that in common use," *C. J. Tower & Sons v. United States,* 41 CCPA 195, 199, C.A.D. 550 (1954), nothing in item 310.01 suggests that the term "twist" therein should be limited to twist commercially significant, intentional, more than slight, or even useful. Intercontinental introduced testimony that the trade considered "twist" to mean more than 2 turns per inch and "producer's twist" to be commercially insignificant. The Government introduced rebuttal testimony that the trade considered producer's twist to have some commercial utility. The Customs Court heard that testimony, observed the demeanor of the witnesses, and resolved the question in favor of the Government. We have not been persuaded that it erred in so doing. In short, Intercontinental has not borne the burden of clearly showing that the commercial meaning of "twist," as used in the statute, differs from its common meaning. Moreover, it appears on the record before us that the trade considers "twist" in its common meaning and uses the qualifying terms "zero" and "producer's" to indicate degree of twist rather than the presence or absence of commercial significance.

The judgment of the Customs Court is *affirmed.*

AFFIRMED.