(C. D. 628)

W. R. WALKER v. UNITED STATES

United States Customs Court, Second Division

(Decided May 6, 1942)

*G. W. R. Wallace; Barnes, Richardson & Colburn (Joseph Schwartz* of counsel) for the plaintiff.

*Paul P. Rao,* Assistant Attorney General *(Richard H. Welsh,* special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges

DALLINGER, Judge: This is a suit against the United States, arising at the port of Chicago, brought to recover certain customs duties alleged to have been improperly exacted on a particular importation of so-called "Notek driving lights." Duty was levied thereon at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 as manufactures of metal not specially provided for. It is claimed that said articles are properly dutiable at the rate of 25 per centum ad valorem under paragraph 369 of said act as parts of automobiles, or alternatively, at the rate of 35 per centum ad valorem under paragraph 353 of said act as parts of articles having as an essential feature an electrical element or device; or at the rate of 25 per centum ad valorem under the following provision incorporated in said paragraph 353 by virtue of the trade agreement entered into between the United States and the United Kingdom promulgated in T. D. 49753, 74 Treas. Dec. 253, which provision reads:

Electrical signaling, radio, welding, and ignition apparatus, instruments (other than laboratory), and devices, electrical generators, transformers, converters, double current and motor generators, dynamotors, and all other articles suitable for producing, rectifying, modifying, controlling, or distributing electrical energy, and articles having as an essential feature an electrical element or device, such as electric motors, locomotives, portable tools, furnaces, heaters, ovens, refrigerators, and signs (except telephone- wiring, diagnostic, and therapeutic apparatus,

instruments, and devices, primary cells, flashlights, switches, switch gear, fans, blowers, washing machines, and machines not herein provided for by name which would be dutiable under paragraph 372, Tariff Act of 1930, if of a kind which could be designed to operate without such electrical element or device, and except articles of a class or kind with respect to which United States import duties have been reduced or bound against increase pursuant to any agreement heretofore concluded under section 350 of such act, as amended); all the foregoing, not specially provided for, finished or unfinished, wholly or in chief value of metal, and not provided for heretofore in any item numbered 353 in this schedule.

At the hearing, held at Chicago on February 29, 1940, the plaintiff, William R. Walker, appeared in his own behalf and, after identifying a sample of said merchandise which was admitted in evidence as exhibit 1, testified in part as follows:

Q. Are you familiar with the manner in which Exhibit 1 is used?—A. I am.

Q. Will you please state what it is used as?—A. It is fitted to the front of an automobile or truck, to provide better vision at night.

Q. I show you a photograph, and ask you if a lamp such as Exhibit 1 is shown thereon?—A. Yes, sir.

At this juncture, the witness marked the place where the lamp is depicted on the photograph of the auto-truck, which photograph was admitted in evidence as illustrative exhibit A. The witness also made a circle around the lamp as shown on another photograph of an auto-truck, which photograph was admitted in evidence as illustrative exhibit B.

The witness then proceeded to testify in part as follows:

Q. Mr. Walker, I noticed that in Illustrative Exhibits A and B, the lamps which you have encircled are in addition to the two regular lamps which are attached to the truck.—A. That is right.

Q. Will you please state what is the purpose of the additional lamp, the one which you have encircled?—A. It provides an auxiliary lighting system, plus the fact that it is more suitable during adverse weather conditions.

Q. You mean at night, of course?—A. That is right.

Q. Will you tell us why that is?—A. If I may use a comparison, driving with a Notek light is similar to driving on a wide road as compared to driving in a tunnel. We have wide angle illumination as compared with intense spot illumination in conventional lights.

\*       \*       \*       \*       \*       \*       \*

By Mr. Schwartz.

Q. Have you made a study of the matter of driving lights?—A. I have.

Q. What did that study consist of?—A. Well, it consisted of making direct comparisons between present lights available on the American market versus the Notek driving light. These tests were made by disinterested companies in some cases, and in all cases the type of illumination provided by Notek was far superior to anything today in lights.

Q. I show you a photograph, and ask you to state what that represents.—A. This is a picture of a section of a road, with a bend to the right about 150 to 200 feet of the car. The camera was placed to the left of the car on the road, and exposed for 30 seconds, giving the illumination effect of conventional lights on a 1935 La Salle automobile.

\*       \*       \*       \*       \*       \*       \*

[Photograph referred to was received in evidence and marked as Plaintiff's Illustrative Exhibit C * * *.]

Q. I show you another photograph and ask you to state what that represents. A. This is the same time, same section of road, same exposure, same camera, taken directly after the first exhibit, with the exception that instead of conventional lights, we used two Notek driving lights for illumination effects.

\* \* \* \* \* \* \* \*

[Photograph referred to was received in evidence and marked as Plaintiff's Illustrative Exhibit D * * *.]

Q. Do you consider it safe to drive at night without the use of a light such as Exhibit 1?—A. I don't think it is safe.

\* \* \* \* \* \* \*

Q. Under what conditions do you consider it unsafe to drive a car, or automobile, or truck, without one of these Notek driving lights?—A. High speed driving when visibility is anything except perfect after the sun is down.

Q. Why is that?—A. Due to the wide angle of the light, and as is the case in most good lights, they glare so much that it makes it hard on the on-coming driver.

Q. Is it, in your opinion, ever impossible to drive at night without one of these Notek driving lights?—A. Very definitely.

Q. Under what conditions?—A. Snow, rain, or some cases, fog.

Q. What is the advantage of using one of these Notek driving lights under such conditions, over the use of a conventional light?—A. By virtue of the ability of the light to confine all its illumination in one band rather than have a lot of rays. That band of light stays close to the road.

Q. I note that the invoice describes these lamps as being complete with cable, switch, and bulb.—A. That is right.

Q. Will you please state whether, as imported, the lamps had cables attached to them?—A. They did.

Q. And did they also contain bulbs?—A. Yes, sir.

Q. And did the carton in which they were imported, also contain switches?—A. Yes, sir.

Q. Will you please state how the lights are attached to the car so as to be ready for use?—A. In some cases where they replace the original equipment, it is only necessary to remove the head lamp and set the Notek on, but in the majority of cases you put an attaching bracket on the bumper, and then in turn fit the Notek light to this bracket already attached.

Q. What happens to the cable?—A. The cable is followed along the frame to the dash, and from there to a switch on the dash, to light and extinguish the light.

Q. In what manner is the electrical energy or power applied to the light?—A. From the battery of the car.

Q. How is the light attached or connected with the battery?—A. Wire is connected directly to the starter switch; from there to the switch on the dash, to control the light.

Q. Can the lamp be operated without the use of a cable?—A. It cannot.

Q. Or a bulb?—A. It cannot.

Q. Or a switch?—A. No.

Q. Can the lamp be operated in any manner other than by electricity?—A. No, sir.

Q. Was the lamp designed solely for use in connection with the use of electricity?—A. Yes, sir.

\* \* \* \* \* \* \*

On cross-examination the witness testified in part as follows:

X Q. Are lights similar to Exhibit 1 part of the regular equipment of an automobile?—A. Original equipment?

X Q. Part of the regular equipment of an automobile.—A. Very many new Cadillacs have been sold with Notek lights attached.

X Q. How about cars in general; are they part of the regular equipment?—A. No, sir.

X Q. Are the cars ordinarily equipped with a cable and switch for such lamps?—A. No, sir.

X Q. You have to work on the car in order to establish the various connections, in order to connect up this light, don't you?—A. No, you don't do any work on the car.

X Q. How do you connect it up?—A. We make certain attachments, but no actual work is done on the car.

X Q. But the automobiles are not ordinarily equipped with the cable and switch for such lamps?—A. No, sir.

X Q. Is the lamp an accessory, Exhibit 1?—A. If an accessory means a non-essential, no, sir. If it is an essential, yes.

X Q. I am asking you, is this light essential to the operation of the car?—A. Yes, sir.

X Q. In other words, you can't drive an automobile unless you have one of these lights?—A. Not safely.

X Q. How many cars have those lights?—A. Not very many.

X Q. Do you consider all the people that are driving cars, running a race with suicide without those lights?—A. They are not aware of the safety the Notek affords.

\*      \*      \*      \*      \*      \*      \*

X Q. The great majority of cars are operated without that light?—A. Yes.

X Q. Very few cars have any standard equipment that contain that light?—A. That is right.

Upon this record counsel for the plaintiff in their brief filed herein contend that the so-called Notek driving lights or lamps are parts of automobiles within the meaning of paragraph 369 of the Tariff Act of 1930; also, that they are articles having as an essential feature an electrical element or device within the meaning of paragraph 353 of said act.

In regard to the first contention we are satisfied that the decision in the case of *United American Bosch Corp.* v. *United States*, 1 Cust. Ct. 1, C. D. 1, is here controlling. In that case we quoted from the previous decision of the appellate court in *United States* v. *Bosch Magneto Co.*, 13 Ct. Cust. Appls. 569 T. D. 41434, wherein certain lamps and horns were held to be parts of automobiles, and then we said:

But this does not mean that an automobile must be held to be incomplete when equipped only with the lighting system and the horn or sound device installed therein by the manufacturer as parts of the regular automobile equipment.

Also, in our said decision, we quoted from decision in *S. H. Kress & Co. et al.* v. *United States*, T. D. 47369, 66 Treas. Dec. 605, as follows:

It is a well-established rule that a "part" of an article is something necessary to the completion of that article. It is an integral, constituent, or component part, without which the article to which it is to be joined, could not *function as such article.* * * *

May it seriously be urged that an automobile already equipped with a horn or other sounding device nevertheless requires one of these bulb horns to complete its equipment in that respect? Such a horn may well be a convenient or desirable accessory, but that would not make the horn a "part" of an automobile in the tariff sense. As stressed by the court in the *Willoughby* case:

> The mere fact that two articles are designed and constructed to be used together does not necessarily make either a part of the other. * * *

In the instant case, it is uncontradicted that these so-called Notek driving lights are not parts of the standard equipment either of automobiles or of automobile trucks, but that they are used only on a comparatively small number of such vehicles. They therefore may not be considered as constituting parts of automobiles for tariff purposes.

In regard to the other claims of the plaintiff alleging the applicability of paragraph 353 of said act to the instant merchandise, counsel for the plaintiff endeavor in their brief to distinguish the instant case from *United American Bosch Corp.* v. *United States, supra,* pointing out that the present Notek driving lights in their imported condition are equipped with cables, switches, and bulbs. In support of their contention counsel cite various decisions of this court which until very recently were undoubtedly the law. But in the very recent case of *United States* v. *N. Minami & Co. Inc.,* 29 C. C. P. A. 169, C. A. D. 188, the United States Court of Customs and Patent Appeals has held that on account of the congressional history of paragraph 353 electrical lighting fixtures, including lamps, were not within the purview of paragraph 353, but were properly classifiable under paragraph 397 of the Tariff Act of 1930 as manufactures of metal not specially provided for. After reciting the congressional history of paragraph 353, the appellate court said:

> From the foregoing it is our tentative view that it was not the intention of Congress to include lighting fixtures, even though of an electrical character, in paragraph 353, but that it was intended that they should be classified under what eventually became paragraph 397. * * *

Upon the established facts and the law applicable thereto we hold that the so-called Notek driving lights constituting the imported merchandise at bar were properly classified by the collector as dutiable at the rate of 45 per centum ad valorem under said paragraph 397 as manufactures of metal not specially provided for. All claims of the plaintiff are therefore overruled and the decision of the collector is affirmed. Judgment will be rendered accordingly.