## WARSHAWSKY & COMPANY

v.

## UNITED STATES.

C.D. 4410; Protest No. 70/45933–16595.

United States Customs Court.

Feb. 27, 1973.

Schwartz & Lidstrom, Chicago, Ill., and Barnes, Richardson & Colburn, New York City (Robert E. Burke, Chicago, Ill., and Earl R. Lidstrom, New York City, of counsel), for plaintiff.

Harlington Wood, Jr., Asst. Atty. Gen. (Patrick D. Gill and Andrew P. Vance, New York City, trial attorneys), for defendant.

LANDIS, Judge:

This case involves the tariff classification of grill mounted fog and driving lights imported from Japan and entered at Chicago on March 13, 1969.

The merchandise here involved to wit: grill mounted 12-volt spot (driving) lights and grill mounted 12-volt fog lights, was classified by customs officials under that tariff provision which provides for illuminating articles, of base metal, dutiable under TSUS (Tariff Schedules of the United States) item 653.39 at 19 per centum ad valorem.[1] The imported fog and driving lights are concededly illuminating articles of base metal. There is, however, in TSUS, as amended,[2] a relatively more specific provision for particular illuminating articles, designated as item 683.65, that are electric lighting equipment designed for motor vehicles. Plaintiff, as a first cause for complaint, alleges that the im-

---

1. As modified by Presidential Proclamation 3822, December 16, 1967, carrying out the Geneva Protocol to the General Agreement on Tariffs and Trade and Other Agreements. 32 F.R. 19002, T.D. 68–9.

2. Tariff Schedules Technical Amendments Act of 1965, P.L. 89–241, § 36(h), 79 Stat. 933, 941 (1965).

ported fog and driving lights are electric lighting equipment designed for motor vehicles and should be so classified under TSUS item 683.65 which provides for a duty rate of only 6.5 per centum ad valorem.[3]

As a second cause for complaint, plaintiff alleges that the classification under TSUS item 653.39 as illuminating articles was contrary to law because it represented a change from a uniform and long established customs practice of classifying fog and driving lights of the class imported under TSUS item 683.65, as electric lighting equipment designed for motor vehicles. The substance of this second cause is not that a uniform practice cannot be changed, but that as applied to the imported fog and driving lights, the uniform practice was changed without proper notice. Notice of a change in practice is required by section 315(d)[4] of the Tariff Act of 1930, as amended, 19 U.S.C.A. § 1315(d), and section 16.10 of the Customs Regulations. In view of the decision I have reached herein on the merits of classifying the imported fog and driving lights under TSUS item 683.65, it is unnecessary to treat or discuss the alleged uniform practice and notice requirements.

In the pertinent context of TSUS, items 653.39 and 683.65 provide as follows:

*Schedule 6.—Metals and metal products*
    Part 3.—Metal Products

    Subpart F.—Miscellaneous Metal Products
*Subpart F headnotes:*

    1. The provisions of this subpart do not include—

        \*     \*     \*     \*     \*     \*     \*

        (iv) illuminating articles provided for in part 5 of this schedule.

        \*     \*     \*     \*     \*     \*     \*

    Illuminating articles and parts thereof, of base metal:

| | | |
|---|---|---|
| 653.30 | Incandescent lamps designed to be operated by propane or other gas, or by compressed air and kerosene or gasoline .............................. | \* \* \* |
| | Other: | |
| 653.35 |     Table, floor and other portable lamps for indoor illumination, of brass ...................... | \* \* \* |
| |     Other: | |
| 653.37 |         Of brass .................. | \* \* \* |
| 653.39 |         Other .................... | 19% ad val. |

*Schedule 6.—Metals and metal products*
    Part 5.—Electrical Machinery and Equipment

        \*     \*     \*     \*     \*     \*     \*

| | | |
|---|---|---|
| 683.65 | Electric lighting equipment designed for motor vehicles, and parts thereof ......... | 6.5% ad val. |

---

3. As modified by Presidential Proclamation 3822, op. cit. n. 1.

4. Section 315(d) reads as follows:
    No administrative ruling resulting in the imposition of a higher rate of

The principal question or issue raised and briefed by both sides is whether fog and driving lights are parts of motor vehicles or merely accessories.

Upon authority of Gallagher & Ascher Company v. United States, 52 CCPA 11, C.A.D. 849 (1964), and cases therein cited, I find and hold that the design, purpose and function of the imported fog and driving lights establish that they are properly classifiable under the TSUS item 683.65 provision for electric lighting equipment designed for motor vehicles, and parts thereof, as claimed by plaintiff.

At the trial of this case, one witness testified for plaintiff and one witness testified for defendant. Exhibits were introduced in evidence by both parties and received without objection. Exhibits 1 and 2, articles representative of the imported fog and driving lights, include the boxes (with printed matter thereon) which contain the articles as imported and sold at retail. Exhibit 3 is a published catalog of "accessories and parts for all makes, years and models for all cars, trucks & motorcycles American & imported" sold by plaintiff (the imported fog and driving lights are catalogued at page 26). Defendant's exhibits A, B and C are Bureau letters replying to inquiries with respect to the tariff classification of fog and driving lights.[5]

The parties have stipulated that the imported fog and driving lights are chiefly used on motor vehicles (R. 3).[6]

Exhibit 1 is a grill mounted type of fog light with a lens of an amber color. Exhibit 2, the driving light, is essentially the same kind of light except it has a clear lens. The testimony for plaintiff,[7] which defendant's witness[8] did not rebut, materially establishes that the imported fog and driving lights are electrical lamps designed and intended for use on motor vehicles; that the lights come with brackets for mounting or attaching the lights to the grill in front of the motor vehicle; that the lamp unit has a center screw for adjusting the beam of the light in the desired direction; that the wiring for the lights is permanently connected into the electrical system of the motor vehicle; that the lights are operated from the driver's seat independently of any other lights on the motor vehicle, by means of a two-position on-and-off "toggle" type switch located on or underneath the dashboard; that the beam of a fog light gives the driver of an automobile better visibility than the regular headlights in fog conditions; and that the driving light provides a stronger beam than the regular "headlights" for night driving. Grill mounted fog and driving lights are a matter of choice, that is, drivers of motor vehicles

duty or charge than the Secretary of the Treasury shall find to have been applicable to imported merchandise under an established and uniform practice shall be effective with respect to articles entered for consumption or withdrawn from warehouse for consumption prior to the expiration of thirty days after the date of publication in the weekly Treasury Decisions of notice of such ruling; but this provision shall not apply with respect to the imposition of antidumping duties.

5. The Bureau's early on (1968) position that fog and driving lights were not parts of automobiles and, therefore, not classifiable as electric lighting equipment designed for motor vehicles (exhibits A and B), changed in 1969 in favor of

classifying fog and driving lights as electric lighting equipment designed for motor vehicles (exhibit C). The Bureau subsequently reverted to its 1968 position "following the principle enunciated in C.D. 4044" 4 Cust.Bull., 782, 785, T.D. 70–254(18) (1970).

6. TSUS General Interpretative Rule 10 (ij) provides as follows:
   (ij) a provision for "parts" of an article covers a product solely or chiefly used as a part of such article * * *.

7. Mr. Donald P. Zeidman, plaintiff's import manager, testified for plaintiff.

8. Mr. Alfred J. Corsini, service manager, Litsinger Motor Company, Chicago, Ill., was the sole witness for defendant.

may or may not choose to equip their vehicles with them. In that sense, they are auxiliary and not replacement equipment for the original or standard lights that are on every motor vehicle manufactured for sale.

Defendant, in support of its contention that fog and driving lights are not parts of automobiles because they do "not become an integral, constituent or component part of * * * [the] motor vehicle" (defendant's brief, page 8), *inter alia* cites United American Bosch Corp. v. United States, 1 Cust.Ct. 1, C.D. 1 (1938), and W. R. Walker v. United States, 8 Cust.Ct. 316, C.D. 628 (1942). *Bosch* held that fog lights and *Walker* held that driving lights were not parts of automobiles under paragraph 369(c) of the 1930 Tariff Act principally because they were not the standard lights with which motor vehicles function but auxiliary or optional lights for motor vehicles that already have standard lights. However, the rationale of the *Bosch* and *Walker* cases, holding that parts of automobiles do not include auxiliary equipment, cannot be considered controlling in view of Gallagher & Ascher Company v. United States, 52 CCPA 11, C.A.D. 849 (1964), as I next discuss.

*Gallagher & Ascher* involved the classification of heaters which were auxiliary to heaters already installed in Volkswagen automobiles. The Customs Court sustained the classification of the auxiliary heaters as articles having as an essential feature an electrical element or device, rather than as parts of automobiles under the 1930 Tariff Act. The court of appeals reversed the Customs Court and held that the auxiliary heaters were properly classifiable as parts of automobiles under paragraph 369(c) of the Tariff Act of 1930. The summary analysis which the court of appeals brought to the factual situation presented by the design, purpose and function of the auxiliary heaters as parts of automobiles, in my opinion, supports plaintiff's claim that fog and driving lights are parts of automobiles, as follows:

* * * This court in *Trans Atlantic* [48 CCPA 30, 33, C.A.D. 758 (1960)] said:

In all of these cases, as in the present case, there was an option on the part of the purchaser of the article to use it either with or without the imported auxiliary devices. When the purchaser elected to use the article with such auxiliary devices, the devices were held in each case to be parts of the article for which they were designed and intended for use. In all these cases the articles could have been used without the imported auxiliary device. In these cases the court considered the function of the auxiliary part when the purchaser elected to use it as a part of the article and did not consider it determinative that the article could function without the auxiliary part.

Here, as in [United States v.] *Pompeo* [43 CCPA 9, C.A.D. 602 (1955)], the imported articles are dedicated to a sole specific use and "for no other use." Here, as in *Trans Atlantic Company*, the imported article serves a useful function. In *Trans Atlantic* the brackets mounted on the door frame were necessary to the efficient operation of the door closer. Here the record supports the view that the auxiliary heater contributed to the safe and efficient operation of the Volkswagen in frigid temperatures in relation to the comfort of its occupants and in aid of the indispensible safety factor of vision by assisting in the removal of ice from the windshield.

The facts of record that the auxiliary heater was optional equipment; that the Volkswagen came equipped with a conventional heater and that the automobile could be operated without the additional heater, are not of such vital import as to be determinative of the issue. When once attached to the automobile to which it was solely dedicated and in the manner disclosed, and in the performance of the

function for which it was designed, it became a part of the automobile within the purview of paragraph 369(c) of the Tariff Act of 1930, as modified. [Gallagher & Ascher Company v. United States, *supra*, at page 16.]

The testimony, summarized above, establishes that as a matter of fact these imported fog and driving lights are designed and dedicated for specific use on motor vehicles and for no other use. In the manner that they are attached to the grill of the motor vehicle and connected to the electrical wiring system of the motor vehicle, the fog and driving lights become integral components of the motor vehicle, and lend to the safe operation of the motor vehicle under certain hazardous road conditions. Since the facts here are the same in all material respects as the facts in *Gallagher & Ascher, supra*, I hold that the imported fog and driving lights are parts of automobiles dutiable under TSUS item 683.65 as electric lighting equipment designed for motor vehicles.

Plaintiff's claim under TSUS item 683.65 is sustained. Judgment will so enter.