ITT THOMPSON INDUSTRIES, INC., Plaintiff,

v.

UNITED STATES, Defendant.

Court No. 78–5–00872.

United States Court of International Trade.

Jan. 22, 1982.

John J. Mahon, New York City, on brief), for defendant.

LANDIS, Judge:

This action, tried before me, involves the classification of electrical sockets and wire harnesses specifically designed for use in automobiles. The merchandise was imported from Mexico and entered at the port of Brownsville, Texas, in 1976.

Customs officials classified the electrical sockets (known as Posi-Lock electrical sockets) as electrical lamp sockets pursuant to TSUS item 685.90 as modified by Presidential Proclamation 3822, T.D. 68–9, with duty assessed thereunder at 8.5 per centum ad valorem. The wire harnesses were classified as "wiring sets designed for use in motor vehicles," under TSUS item 688.12, as modified, *supra*, with duty assessed at 5 per centum ad valorem.

Plaintiff claims that the importation should have been classified under TSUS item 683.65, as modified, *supra*, as "electric lighting equipment designed for motor vehicles," with duty assessed at 4 per centum ad valorem, or alternatively, under TSUS item 685.70, as modified, *supra*, as visual signalling apparatus, with duty at the rate of 4 per centum ad valorem.

The pertinent Tariff Schedule provisions which appear in Schedule 6, Part 5 are:

Defendant's classification:

[Sockets]

685.90 Electrical switches, relays, fuses, lightning arresters, plugs, receptacles, lamp sockets, terminals, terminal strips, junction boxes and other electrical apparatus for making or breaking circuits, for the protection of electrical circuits, or for making connections to or in electrical circuits; switchboards (except telephone switchboards) and control panels; all the foregoing and parts thereof .......................... 8.5% ad val.

[Harnesses]

Insulated (including enamelled or anodized electrical conductors, whether or not fitted with connectors (including ignition wiring sets, Christmas-tree lighting sets with or without their bulbs, and other wiring sets):

\* \* \* \* \* \* \*

Barnes, Richardson & Colburn, New York City (Andrew P. Vance, New York City, at trial; Andrew P. Vance, New York City, and Jack D. Mlawski, Brooklyn, N. Y., on briefs) for plaintiff.

J. Paul McGrath, Asst. Atty. Gen., Washington, D. C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, New York City (Susan C. Cassell, San Diego, Cal., at trial;

With fittings:

\* \* \* \* \* \* \*

688.12      Ignition wiring sets and wir-
ing sets designed for use
in motor vehicles and craft
provided for in part 6 of
schedule 6 . . . . . . . . . . .5% ad val.

Plaintiff's claim:

[Sockets and harnesses]

683.65    Electric lighting equipment designed
for motor vehicles, and parts there-
of . . . . . . . . . . . . . . . . . . . . . . . . .4% ad val.

Plaintiff's alternative claim:

685.70    Bells, sirens, indicator panels, burg-
lar and fire alarms, and other
sound or visual signalling apparatus,
all the foregoing which are electri-
cal, and parts thereof . . . . . . . . . .4% ad val.

The issues addressed to the classificátion of the Posi-Lock socket are whether these sockets are properly classified as electrical lamp sockets under TSUS item 685.90, or whether the classification of the sockets is more specifically provided for under TSUS item 683.65 as electrical lighting equipment designed for motor vehicles and parts there-of, or under TSUS item 685.70 as sound or visual signalling apparatus or parts thereof.

The issues addressed to the classification of the wire harnesses are whether the harnesses are properly classified as wiring sets designed for motor vehicles under TSUS item 688.12, or whether the classification is more specifically provided for under TSUS items 683.65 and 685.70 as stated above.

At the trial, five witnesses testified and thirteen exhibits were introduced on plaintiff's case. Three witnesses testified and one exhibit was introduced on defendant's case.

### The Sockets

Plaintiff does not contend that the sockets in issue are not electrical lamp sockets. The testimony of both plaintiff's and defendant's witnesses indicates that the basic functions of lamp sockets are to hold and retain bulbs and provide the means for supplying electrical current to the retained bulb. Witnesses for both parties are basically in agreement that the sockets in issue are electrical lamp sockets. This indicates

that these sockets are correctly classifiable under TSUS item 685.90 which provides an *eo nomine* designation for lamp sockets. In order to prevail plaintiff has attempted to demonstrate that these sockets are properly classifiable under another TSUS item which more specifically provides for this socket than TSUS item 685.90.

Initially, plaintiff argues that the sockets in issue are electric lighting equipment designed for motor vehicles and thereby are specifically classifiable under TSUS item 683.65.

Both sides have argued as to the legislative intent and it is settled that where aid to the construction of words is available resort may be had to House and Senate Reports in determining the legislative history. *United States v. American Trucking Association, Inc. et al.*, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940); *J. E. Bernard Co. v. United States*, 81 Cust.Ct. 60, C.D. 4766 (1978).

In reviewing the applicable case law, Congressional intent and the witnesses' testimony, it is readily apparent that the term electrical equipment as used in the TSUS item is intended to encompass that combination of electrical equipment responsible for producing an end result of *actual illumination*, and any *part* of electrical lighting equipment which provides a necessary function in attaining the end result of illumination. It cannot be denied that the sockets are both electrical equipment and electrical apparatus. They are not, however, *lighting* equipment or *lighting* apparatus since they cannot, standing alone, produce light or otherwise illuminate. They are, at best, a *part* (indeed an integral part) of electrical lighting equipment designed for motor vehicles.

TSUS item 683.65 relating to electric lighting equipment for motor vehicles became effective on December 7, 1965 as a result of passage of the Tariff Schedules Technical Amendments Act of 1965 (79 Stat. 933). The House Report accompanying this bill, H.R.Rep.No.342, 89th Cong., 1st Sess. 25 (1965), indicates that this partic-

ular TSUS item relates to equipment which when functioning provides an end result of actual illumination. The House Report states:

> (h) *Lighting equipment designed for motor vehicles.*—Subsection (h) of section 30 sets up a new item for lighting equipment designed for motor vehicles and parts thereof, at 8½ percent ad valorem. This new item 683.65 applies principally to equipment presently covered by item 653.40 for which the rate is 19 percent ad valorem. Under the former tariff schedules the articles covered by proposed new item 683.65 were classified as automotive parts at 8½ percent ad valorem.

> The new item will apply, for example, to headlamp assemblies consisting of sealed beam units and their frames and mountings. It should be noted, however, that this amendment does not affect the status of sealed beam lamps imported separately; such lamps are specifically provided for in item 686.60.

> The new provision is not limited to headlight assemblies; it also covers other motor vehicle lighting equipment such as taillight assemblies and parking light assemblies.

In order to fully appreciate the ramifications of this section of the House Report it is necessary to examine the TSUS item to which it refers, namely, 653.40. Item 653.-40 states:

Illuminating articles and parts thereof, of base metal:

    \*    \*    \*    \*    \*    \*    \*

     Other ...................... 19% ad val.

The Tariff Classification Study, Schedule 6, Part 3, page 203 (1960), Explanatory Notes for items 653.30–653.40 states in pertinent part:

> Items 653.30 through 653.40 covering *illuminating* articles and parts thereof, of base metal, are derived \* \* \*. Item 653.-40 covers "other" *illuminating* articles dutiable at various rates \* \* \* [Emphasis supplied.]

Thus, the House Report accompanying the Technical Amendments Act of 1965 was intended to apply principally to articles covered under item 653.40. The articles classifiable under 653.40 are limited to illuminating articles. Therefore, the equipment classifiable under 683.65 must be equipment that has an end functional result of *actual* illumination, or parts thereof. This intention is also discernible from the examples enumerated in the House Report accompanying the Technical Amendments Act of 1965, namely, "headlamp assemblies consisting of sealed beam units and their frames and mountings", and further on, " \* \* \* it also covers other motor vehicle lighting equipment such as taillight assemblies and parking light assemblies". The fact common to these examples is that all are comprised of equipment capable of an end result of shedding *actual* illumination as assemblies.

Case law lends strong support to the foregoing legislative intent. In *Robert Bosch Corp., Arthur J. Fritz & Co. v. United States*, 63 Cust.Ct. 96, C.D. 3881 (1969),[1] the court's basic holding was that in order to be considered lighting equipment an article must be capable of furnishing actual illumination.

In actuality, the *Bosch* Court recognized that the Summaries of Trade and Tariff Information were prepared after the effective date of the applicable legislation and, in fact, was cited by the *Bosch* Court as a confirmation of the court's construction of the tariff schedule provision. The court stated, "though the material prepared in this summary was collated in July of 1968, and published in 1969, it appears to reflect the understanding of Congress in adding item 683.65 to the TSUS \* \* \* " (at 101). Such application of the summaries is entirely proper. *Poland Brothers, Inc. v. United States*, 64 Cust.Ct. 248, C.D. 3986 (1970); *American Bris-*

---

1. Plaintiff maintains that the court in *Bosch* incorrectly relied upon the Summaries of Trade and Tariff Information (1969), Schedule 6, Volume 10 at 209 and 210, and the Explanatory Notes to the Brussels Nomenclature 1955, Volume III, pages 937 and 938, citing *Astra Trading Corp. v. United States*, 65 Cust.Ct. 6, C.D. 4044 (1970).

In reading *Bosch* this Court notes that the *Bosch* court did, in fact, cite these two sources in support of its holding. However, the *Bosch* court also cited the Tariff Classification Study in support thereof and then, in very encompassing and distinctively clear language stated, "*In any event* switches are not lighting equipment *per se*, for they are not complete devices for furnishing illumination" (at 102). Thus the

court held that flasher units which cause directional lights to blink were not classifiable as electrical lighting equipment. While the subject equipment was switches and not sockets, the reasoning of the court is instructive as to what is required of merchandise before it can be classified as electrical lighting equipment. The court succinctly stated:

> In any event switches are not lighting equipment *per se*, for they are not complete devices for furnishing illumination. They are, at best, parts which, when combined with housings, bezels, lenses, sockets and bulbs, and the like, constitute the lighting equipment of motor vehicles. * * [*Id.* at 102.]

The same reasoning was applied in a case decided contemporaneously, with *Robert Bosch, Id.*, see, *British Auto Parts, Inc., Ted L. Rausch v. United States*, 63 Cust.Ct. 105, C.D. 3882 (1969).[2]

In reviewing the testimony relating to the particular issue of whether the sockets are lighting equipment, the court finds that the preponderance of the testimony supports the conclusion that the sockets are parts of the lighting equipment of an automobile but do not constitute the overall lighting equipment thereof. Each of plaintiff's witnesses at one point in their testimony uncategorically stated that the sockets are lighting equipment designed for a motor vehicle. However, a careful analysis of each witness' entire testimony indicates that the witnesses actually understood the sockets to be a *part* of the overall lighting equipment of a motor vehicle.

On direct examination plaintiff's witness Melvin B. Polkinghorn when asked the following question, gave the following answer (R. 96):

Q. What do you consider to be the lighting equipment of a motor vehicle?
A. The lighting equipment would be— well, any of your exterior lamps, your signalling devices, headlamps *used for illumination*, your front two corners used for directional signals, your rear two corners would be used for your brake, and your *running lighting assembly*. [Emphasis supplied.]

Plaintiff's witness Robert E. Valk when asked the following questions, responded as follows (R. 127):

Q. What constitutes the lighting equipment of a motor vehicle? A. The lighting equipment of a motor vehicle is a *visible light which provides a function for illuminating or signalling*.

Q. Could you list the components of a motor vehicle making up the lighting equipment of such vehicle? A. Well, the components of the lighting equipment, of course, include the lens, the housing for the lights, the light means, which is the bulb, it includes the socket that the bulb goes into, it includes the wiring to that socket, and includes the sourcing of the power to the wiring, and through the controls to the socket, to the light. [Emphasis supplied.]

Likewise, plaintiff's witness Robert W. Costin when asked the following question, responded as follows (R. 159):

Q. What do you understand lighting equipment of a motor vehicle to consist

---

tle & Hair Drawing Co., et al. v. United States, 59 CCPA 104, C.A.D. 1048, 458 F.2d 524 (1972).

While the *Bosch* court's reliance on the Brussels Nomenclature has been previously held improper, *Astra Trading Corp. v. United States*, 65 Cust.Ct. 6, C.D. 4044 (1970), it is not sufficient to overturn the basic principle of law regarding lighting equipment in view of the evidence and other proper reliances by that court. The reliance may also be viewed as confirmatory in nature.

**2.** In *Warshawsky & Company v. United States*, 70 Cust.Ct. 75, C.D. 4410, 360 F.Supp. 436 (1973), this Court was confronted with the clas-

sification of grill mounted fog and driving lights. In upholding plaintiff's claimed classification under TSUS item 683.65, the court, citing *Gallagher & Ascher Company v. United States*, 52 CCPA 11, C.A.D. 849 (1964), found that the imported merchandise was considered parts of motor vehicles and not merely accessories thereof in that they became integral components of the motor vehicle and lend to its safe operation. The fog lights and driving lights in that case did in fact provide actual illumination as an assembled unit, unlike the merchandise in the present case.

of? A. Lighting equipment of a motor vehicle is the system for any components within the system that *provide illumination* either within or exterior to the motor vehicle. [Emphasis supplied.]

Finally, plaintiff's witness Karl Santii in reply to a similar question stated (R. 38):

* * * Everything included in the entire system required to properly *light* the vehicle; which would be the wiring harnesses, the connectors, sockets, bulbs, lamp housings, the lenses—everything involved in providing the lighting functions that are required. [Emphasis supplied.]

Defendant's witness John R. Dawson stated that a socket is *part* of the overall lighting equipment of a motor vehicle (R. 229) which was concurred in by defendant's witness Robert C. Brownlee who called the socket a *component* of the lighting system (R. 269).

It is quite evident from the foregoing testimony that the expert witnesses deem the socket as a *part* of the lighting system of a motor vehicle but not lighting equipment *per se* because the sockets do not have the capability of actual illumination.

Plaintiff argues, alternatively, that the sockets are electrical visual signalling apparatus and thereby classifiable under TSUS item 685.70.

It is aximomatic that a statute must be construed to carry out legislative intent. To determine that intent, one must first look to the statutory language itself. *United States v. Siemens America, Inc., et al.*, 68 CCPA ——, C.A.D. 1266, 653 F.2d 471 (1981); *Intercontinental Fibers, Inc. v. United States*, 64 CCPA 31, C.A.D. 1179, 545 F.2d 744 (1976).

■ In examining item 685.70, the court initially notes that the statute is meant to encompass imported items that actually (physically) convey a visual or a sound signal from someone or something to someone or something. All the exemplars enumerated in the statute, bells, sirens, indicator panels, burglar and fire alarms, have the capability of producing the *actual* sound or signal. As such, these exemplars represent a complex or compound unit with the end capability result of actually conveying a sound or visual signal.

The socket is apparatus.[3] It is composed of certain parts or devices which, when assembled, are designed to hold a bulb and provide a conduit for a power source supply thereto.[4] However, the socket is not visual signalling apparatus. Standing alone, the socket is incapable of providing an end result of actual illumination or sound necessary to initiate the signal. Once again, it is, at best, a part of the visual signalling apparatus.

■ The court has construed the term *apparatus* on frequent occasions. *United States v. Wyman & Co.*, 2 Ct.Cust.Appls. 440, T.D. 32200 (1912); *J. E. Bernard & Co., Inc. v. United States*, 62 Cust.Ct. 537, C.D. 3882 (1969), aff'd 58 CCPA 91, C.A.D. 1009, 436 F.2d 506 (1971). Generally, the court has consulted standard lexicons to arrive at a definition for *apparatus*. Basically, these lexicons are in agreement that the term *apparatus* is collective in the sense that it is intended to encompass a group of devices or a collection or set of materials, instruments

3. Indeed, in TSUS item 685.90 the lamp socket while specifically mentioned by its *eo nomine* designation as a lamp socket is further alluded to as electrical apparatus. Specifically, the statutory language states:

Electrical switches * * * lamp sockets * * and *other* electrical apparatus * * * [Emphasis added.]

Had Congress contemplated that lamp sockets or other mentioned exemplars were not apparatus it would have omitted the word "other" which, in context here, includes all of the aforementioned exemplars as examples of electrical apparatus.

Apparatus can be equipment.
The *I.E.E.E. Dictionary of Electrical and Electronic Terms* (2d ed. 1977) defines equipment:
Equipment (electrical engineering):
A general term including materials, fittings, devices, appliances, fixtures, *apparatus*, machines, etc., used a part of, or in connection with, an electrical installation. [Emphasis added.]

4. The socket is an assembled end product consisting of a plastic body, a rubber cushion, bulb holder, current carrying parts and springs.

or appliances to be used for a particular purpose or a given end.[5]

The sockets in issue are completely in accord with the definition for apparatus. They are a group of devices or a collection or set of materials (footnote 5, supra). They have a purpose or a given end—to hold a bulb and provide a means of supplying it with electrical current. Their particular or immediate purpose is not to give an actual visual signal but merely to hold a bulb and provide a means of electrical conduit. Thus, they are not *visual signalling* apparatus but merely electrical apparatus.

The trial testimony on this point is not decisive of the issue. When asked whether the sockets in issue are visual signalling apparatus, plaintiff's witness Santii responded "yes" reasoning that they were a necessary part of the system for signalling function on a motor vehicle (R. 39). Plaintiff's witness Polkinghorn responded likewise (R. 97).

Plaintiff's witness Valk, in response to the aforementioned question stated (R. 133):

> That term means to me those *lights* which either by their *action* or *illumination signal* someone outside of the vehicle itself in another vehicle or afoot of the vehicle or its whereabouts.[6]

Plaintiff's witness Costin defined visual signalling apparatus broadly to include the battery and fuses (R. 162) although previously he alluded to the "lamp" functions of the sockets (R. 160).

Defendant's witness Brownlee on cross-examination testified that sockets are apparatus (R. 272) but they do not make the signalling system (R. 272).

Defendant's witness Dawson on cross-examination stated (R. 233) in response to whether sockets are visual signalling apparatus:

> "They are certainly *part* of visual signalling systems, yes."

His testimony, as a whole, contemplated lighting equipment and apparatus to be the combination of devices and electrical apparatus which when assembled could *actually* shed light.

In review, the term apparatus is a broad and all encompassing term whose outer boundaries are defined and perceived by professional engineers in various perspectives. Sockets are encompassed by the term apparatus. However, their end purpose is to hold a bulb and provide a circuit for carrying the power supply to the bulb. Sockets have no independent means of illuminating but they are a *part* of the system composed of devices, apparatus and equipment which, when assembled, constitute visual signalling apparatus.

■ The court holds that the sockets in issue were properly classified under TSUS item 685.90 and the court further finds that the sockets in issue are *parts* of electrical lighting equipment designed for motor vehicles (TSUS item 683.65) and parts of visual signalling apparatus (TSUS item 685.70).

At this juncture the court must determine whether item 685.90 is a more specific

---

5. *Webster's Third New International Dictionary* (1963 ed.) defines the term "apparatus" as follows (at 102):
   apparatus * * *
   2 a: a collection or set of materials, instruments, appliances, or machinery designed for a particular use * * *
   b: any compound instrument or appliance designed for a specific mechanical or chemical action or operation * * *
   The word "apparatus" is defined by the *Century Dictionary* as:
   * * * an equipment of things provided and adapted as a means to some end; especially a collection, combination, or set of machinery, tools, instruments, utensils, appliances, or materials, intended, adapted, and necessary for the accomplishment of some purpose, such as mechanical work, experimenting, etc.; as, chemical philosophical, or surgical apparatus.
   *Funk & Wagnalls Standard Dictionary* (International Edition, 1963) defines *apparatus*:
   A complex device or machine for a particular purpose.

6. Interestingly, when witness Valk was asked on direct examination whether the wiring harnesses were visual signalling apparatus he answered: "They are *part* of the visual signalling apparatus." (R.133.) [Emphasis added.]

classification provision than item 683.65 or item 685.70.

TSUS item 685.90 is a bifurcated classification statute. Specifically, it lists certain *eo nomine* items (switches, lamp sockets, etc.) and follows with a basket provision for electrical apparatus. The lamp sockets are specifically mentioned by name, an *eo nomine* designation, in item 685.90. Obviously, they are part of the *eo nomine* designation under item 685.90 and not part of the "basket type" designation under item 685.-90. Since this Court has held that the sockets are also classifiable as parts of electric lighting equipment designed for motor vehicles under item 683.65 and/or as parts of visual signalling apparatus under item 685.70, the basic issue as to relative specificity is whether an *eo nomine* provision more specifically ʿdescribes merchandise than a *parts* provision.

█ General Interpretative Rule 10(ij) is controlling of this issue.

General Interpretative Rule 10(ij) provides:

> (ij) a provision for "parts" of an article covers a product solely or chiefly used as a part of such article but does not prevail over a specific provision for such part.

Clearly, item 685.90 is a specific provision for lamp sockets and, therefore, prevails over the "parts" provisions found in items 683.65 and 685.70. *Robert Bosch Corp. v. United States, supra; J. E. Bernard & Co., Inc. v. United States, supra.*

Accordingly, the court holds that Customs' classification of the electric lamp sockets in issue under item 685.90 is correct and the denial of plaintiff's protest by the District Director is affirmed.

### Harnesses

In classifying the wire harnesses in issue pursuant to TSUS item 688.12, Customs officials determined the harnesses were wiring sets designed for use in motor vehicles. Neither party has found a "per se" lexicographic definition of the term "wiring sets". In its independent research the court likewise has been unable to locate a precise definition of that term. Further, the testimony of the eight expert witnesses indicates their perplexity with this term.

Of the three witnesses who testified for defendant, witness Dawson (R. 249) and witness Mueller (R. 283) stated that they did not have a definition for the term "wiring set". Witness Brownlee did not testify on the harness issue.

Of the five witnesses who testified for plaintiff, four stated that the harnesses in issue were not considered wiring sets. However, these four witnesses did not define the term "wiring set". Witness Santii merely stated, "I would not refer to it as a wiring set" (R. 67), but gave no reason for his answer. He did admit that he would call it a set of wires. Witness Polkinghorn stated that it would not be proper to call the harness a wiring set because: "It's just not terminology that I have ever heard used in the industry of something of this sort." (R. 98.) Witness Valk did not address the term "wiring set" during his testimony. Witness Costin stated that wiring sets in the automotive industry are ignition wiring sets which are basically high voltage wires and that it would be improper to call the harnesses wiring sets (R. 162). Witness Costin's testimony does little to explain why Congress used both the term "ignition wiring sets" and "wiring sets" in the statute.

The only testimony that sheds even a glimpse of enlightment as to what a "wiring set" actually is, comes from the testimony of witness Witek. At the outset of his testimony the witness stated that harnesses could be called a loom or an assembly. (R. 186.) Later, the witness testified that a wiring assembly could not be designated an ignition wiring set nor was the ignition wiring part of the same circuitry as the wiring assembly (R. 193). This response was immediately followed by this question and answer:

> Q. Is there a difference between a wiring set and a wiring assembly? A. Yes. The wiring set has a totally different configuration. Also, it is several units of a—several different pieces. And a wiring assembly is something that is all

put together in one unit. It can be one wire with connectors and blocks on either end of many, many wires, but fastened all together as an assembly. [R. 193–194.]

From this response it is not entirely clear whether the witness is defining wiring sets in general or whether he is referring to a specific wiring set—namely an ignition wiring set. While the question asked is general in nature " * * * between a wiring set * * * ", the response is seemingly specific, "Yes. The wiring set" presumably referring to the ignition wiring set about which the witness was questioned immediately prior to the question.

In any event, the composite testimony of the eight expert witnesses clearly indicates there is no patterned commercial definition of the term "wiring sets". Their testimony is inconclusive as to the meaning of the term. In fact, the testimony points out the clear need for the court to examine and viably define the term in view of its use in the tariff schedules.

■ It is well-established in customs jurisprudence that the tariff terms are to be construed in accordance with their common and commercial meanings, which are presumed to be the same. *United States v. C. J. Tower & Sons of Buffalo, N. Y.*, 48 CCPA 87, C.A.D. 770 (1961); *Merry Mary Fabrics, Inc. v. United States*, 1 CIT ____, Slip Op. 80–3 (Nov. 18, 1980). To aid their knowledge of the common meaning of a term courts may consult dictionaries, lexicons, scientific authorities and other reliable sources of information. *Trans-Atlantic Company v. United States*, 60 CCPA 100, C.A.D. 1088, 471 F.2d 1397 (1973); *United States v. C. J. Tower & Sons of Buffalo, N. Y., supra.*

Since it is unable to find a definition of the compound term "wiring set" the court will examine the individual terms.

The term "wiring" is simply defined in *Webster's Third New International Dictionary of the English Language, Unabridged Edition* (1966 ed.) as:

* * * 1. the act, practice or instance of providing or using wire; 2. a system of wires: an arrangement of wires used for electric distribution.

An examination of the sample harnesses indicates they are composed of many different insulated wires which are used for electric distribution.

The term "set" as it specifically pertains to electric and electronics parts and equipment is somewhat more complicated and is defined by the *IEEE Standard Dictionary of Electrical and Electronics Terms*, Second Edition (1977), as:

* * * A unit or units and necessary assemblies, subassemblies, and basic parts connected or associated together to perform an operational function. Typical examples: search radar set, radio transmitting set, sound measuring set; these include such parts, assemblies, and units as cables, microphone, and measuring instruments.

Likewise, *Webster's Third New International Dictionary* (1966 ed.) defines "set" as:

* * * 45. an apparatus of electrical or electronic components assembled so as to function as a unit (radio set, television set, amplifying set, sending set).

■ It is apparent from these definitions and related examples that a "set" must be capable of performing a specific function by itself without assistance from an outside source.

Before the court ascertains whether the merchandise in issue is a set it will, for comparison purposes, ascertain the nature of the function of the set intended to be classified under TSUS item 688.12. The reference heading to this TSUS item specifically mentions "insulated * * * electrical conductors, whether or not fitted with connectors" and then specifically includes "ignition wiring sets, Christmas-tree lighting sets with or without their bulbs, and other wiring sets."

■ The samples of this particular merchandise must be deemed a potent witness. *United States v. The Halle Bros. Co.*, 20 CCPA 219, T.D. 45995 (1932). To arrive at

a conclusion that the harnesses do not constitute a wiring set designed for use in motor vehicles would be directly in contrast to the visual samples as well as the weight of the overall evidence. Of the eight expert witnesses only one even attempted to define a "wiring set" and his definition was unpersuasive. The court therefore finds that the harnesses were properly classified under their *eo nomine* designation of wiring sets pursuant to item 688.12.

 This court also finds that the harnesses constitute only parts of either electric lighting equipment designed for motor vehicles pursuant to item 683.65 or, only parts of other sound or visual signalling apparatus under item 685.70. This finding is premised upon the same reasoning as the socket classification, *infra*. The harnesses, standing alone, cannot produce *actual* illumination nor can they produce an *actual* sound or visual signal. They are only parts of those respective systems.

The court also finds that item 688.12, being an *eo nomine* type provision, more specifically provides for the merchandise than either item 683.65 or item 685.70 as they relate to parts pursuant to General Headnote 10(ij).

Accordingly, the court holds that Customs' classification of electric lamp sockets pursuant to TSUS item 685.90 and classification of the harnesses as wiring sets pursuant to TSUS item 688.12 is correct and the denial of the protests by the District Director is affirmed.