*Dewey, Ballentine, Bushby, Palmer & Wood, (Alan Wm. Wolff, Jane Albrecht)* and *Akin, Gump, Strauss, Hauer & Feld, (Richard R. Rivers)* for *amicus curiae* Lone Star Steel Co.

## MEMORANDUM OPINION AND ORDER

DiCARLO, *Judge:* On June 12, 1986 the Court held that a final determination by the Department of Commerce, International Trade Administration (Commerce) that pads for woodwind instrument keys from Italy are being sold in the United States at less than fair value, was not supported by substantial evidence or in accordance with law. *Luciano Pisoni Fabbrica Accessori Instrumenti Muscali, et al.* v. *United States,* 10 CIT 424, Slip Op. 86–62 (June 12, 1986). Commerce's final determination had resulted in an order assessing an antidumping duty of 1.16% *ad valorem.*

The Court held that Commerce had improperly compared different merchandise in determining the difference between United States price and home market price. The action was remanded to Commerce with instructions to make an adjustment for differences in the physical characteristics of the merchandise under 19 C.F.R. § 353.16 (1985).

The Court also held that in an investigation involving only ten home market sales, Commerce may not reasonably find a dumping margin by using quarterly exchange rates when no dumping margin would result if conversions were based on rates prevailing at the time of the transactions.

In accordance with the Court's instructions, Commerce made a merchandise adjustment under 19 C.F.R. § 353.16 and used daily exchange rates for all lira/dollar conversions. Commerce found a weighted-average dumping margin of .286%, which it said was *de minimis,* and concluded that the merchandise was being sold in the United States at not less than fair value.

Although Commerce did not give its reasons for finding the dumping margin *de minimis, see Carlisle Tire & Rubber Co.* v. *United States,* 10 CIT 301, 634 F. Supp. 419 (1986), the parties have submitted their comments on the remand proceedings, and there are no objections to Commerce's redetermination.

Accordingly, Commerce's redetermination is affirmed and the action is dismissed. So ORDERED.

THE DESERET CO., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 83–5–00718

(Decided September 17, 1986)

*Barnes, Richardson & Colburn (David O. Elliott)* for plaintiff.

*Richard K. Willard,* Assistant Attorney General, *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office and *Barbara M. Epstein,* Civil Division, United States Department of Justice.

OPINION

RESTANI, *Judge:* This action involves the proper classification for tariff purposes of electro-cardiograph (EKG) electrodes, pads, and strippers. Each EKG electrode consists of a circular piece of foam with an adhesive on one side. In the center of the foam is a metal electrode on a small pre-gelled disc. The electrode is in the form of a snap which enables it to be connected to lead wires. These wires are attached to a cable which is plugged into an EKG machine. Each EKG pad consists of a piece of rectangular foam on which there are affixed four metal or silver chloride electrodes, surrounded by four adhesive discs. A separate wire is attached to each of the four electrodes. These wires are bound together at one end by a connector that allows the wires to be plugged into the cable which, in turn, is plugged into the EKG machine. Each EKG stripper consists of either three or four electrodes, each of which is connected to a separate wire. The wires are bound together at one end by a four pole plug. The plug is attached to the cable which is plugged into the EKG machine.

Upon entry through the port of Nogales, Arizona, in 1981, the United States Customs Service (Customs) classified the EKG pads and EKG strippers under item 688.15 of the 1981 Tariff Schedules of the United States (TSUS) which provides for: "[i]nsulated * * * electrical conductors * * * [w]ith fittings * * * Other," at the rate of 6.3% *ad valorem.* The EKG electrodes were classified under item 685.90, TSUS (1981), as "other electrical apparatus * * * for making connections to or in electrical circuits" at the rate of 7.7% *ad valorem.* Plaintiff, Deseret Company (Deseret), challenges Customs' classification and alleges, instead, that the proper classification for all the merchandise is item 709.17, TSUS, which provides for "electro-medical apparatus and parts thereof * * * Other,"[1] at the rate of 5.6% *ad valorem.*

In support of its classification, Customs asserts that the articles in question are not separate "apparatus," but are "parts" of an EKG machine and that TSUS General Interpretative Rule 10(ij) is controlling. General Interpretative Rule 10 (ij) provides that "a provision for 'parts' of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part." Customs further states that items 685.90, TSUS and 688.15, TSUS, specifically provide for the articles.

In contrast, plaintiff argues that the articles are "apparatus," rather than "parts" and that General Interpretative Rule 10(ij) is therefore inapplicable. In addition, plaintiff states that because the

---

[1] The statistical annotations to item 709.17 are subdivided into (1) "Therapeutic apparatus," which is not applicable, (2) "Other apparatus," which includes "electrocardiographs;" and (3) "Parts, not specifically provided for."

articles are "apparatus," headnote l(vi) of part 5 to schedule 6, which applies to Customs' classification here, precludes classification of the articles in question under items 685.90 and 688.15, TSUS. This headnote states that part 5 to schedule 6 "does not cover * * * electrical instruments and apparatus provided for in schedule 7." Plaintiff, therefore, claims that item 709.17, TSUS, is the proper classification for the merchandise. The court notes that plaintiff concedes that if the articles in question are "parts," then Customs' classifications here are correct.[2] Defendant, on the other hand, concedes that if the articles are "apparatus," then plaintiff's asserted classification must prevail.

This case cannot be decided on such a basis. The terms "parts"[3] and "apparatus" are not mutually exclusive and an article may be apparatus and at the same time may be a part of another article. *See J.E. Bernard & Co., Inc.* v. *United States,* 62 Cust. Ct. 536, 259 F. Supp. 1129 (1969) *aff'd* 58 CCPA 91, 436 F.2d 506 (1971) (meter irises in motion picture cameras were both parts and apparatus); *Westinghouse Electric International Co.* v. *United States,* 28 Cust. Ct. 209, 218, C.D. 1411 (1952) (cameras used with X-ray apparatus held to be parts and apparatus).[4]

The merchandise at issue fits the broad definition of apparatus—an aggregate of materials intended for a specific use. *ITT Thompson Industries, Inc.* v. *United States,* 3 CIT 36, 44, 537 F. Supp. 1272, 1277–78, *aff'd* 703 F.2d 585 (Fed. Cir. 1982). Furthermore, the merchandise fits the definition of electro-medical apparatus. Defendant, however, cites *ITT* in support of its position. In *ITT* the court found that the lamp sockets and harnesses at issue were not classifiable as "electric lighting equipment" or "visual signaling apparatus" because they were only "parts" of these items. 3 CIT at 39–46, 49, 537 F. Supp. at 1274–79, 1281. The court was convinced by the relevant legislative history and trial testimony that "electric lighting equipment" must be able, "standing alone, [to] produce

---

[2] Plaintiff apparently acknowledges, therefore, that if the articles are "parts," they are specifically provided for in schedule 6, part 5. What constitutes a specific provision for purposes of Rule 10(ij) is a topic of some debate, but applicable generic provisions will suffice. *See Tariff Classification Study, Seventh Supplemental Report* (Aug. 14, 1963) (p. 99):

General Headnote 10(ij)—*Parts.* A provision for "parts" does not prevail over a specific provision for such part. Thus, a provision for "parts" *is more specific than a provision for* "articles, not specially provided for", *but is not more specific than provisions such as the following for:* "springs" (item 652.85), "illuminating articles" (items 653.30–.40), "pumps" (items 660.90–661.15), etc.

The court does not rely on plaintiff's concession and does not reach the issue of whether Customs' classifications are sufficiently "specific" within the meaning of Rule 10(ij).

[3] There seems to be some confusion as to whether Rule 10(ij) provides a definition of "parts." It does not. The main clause of Rule 10(ij) specifies in what circumstances merchandise may be classified under a provision for parts of another article rather than as a separate item. Merchandise may be so classified when it is "chiefly used as a part of such article." This rule of classification is meant to override prior case law which required the merchandise to be *dedicated to use* as a part of such article. *See E.R. Hawthorne & Co., Inc.* v. *United States,* 730 F.2d 1490, 1492 (Fed. Cir. 1984) (citing 2 R. Sturm, *Customs Law and Administration,* § 354.9, at 42 (3rd Ed. 1983). *See also United States* v. *DeLaval Separator Co.,* 65 CCPA 48, 50, 569 F.2d 1134, 1135–36 (1978) (farm tanks classified as "parts" because they were "solely or chiefly" used as parts of another article). This rule of classification does not, however, answer the question of what is a part of an article. That question remains to be analyzed pursuant to the standards developed in a long line of cases. "The nature, function and purpose of an item in relation to the article to which it is attached or designed to serve determines whether the item constitutes a part of the article." *Ideal Toy Corp.* v. *United States,* 58 CCPA 9, 13, 433 F.2d 801, 803 (1970).

There is no question that the merchandise at issue here is "chiefly used" with an EKG machine. In fact, the parties have stipulated that this is the only use of the merchandise. There is a question as to whether the merchandise is a part of the EKG machine. That is, many things, which are used only with an article, and without which the article would not function, are not parts. Film for a camera is one common example.

[4] Although *Westinghouse* was decided prior to the introduction of General Interpretative Rule 10(ij) and headnote l(vi), it remains valid for the proposition that "parts" and "apparatus" are not mutually exclusive terms.

light or otherwise illuminate." *Id.* at 40, 537 F. Supp. at 1274. Similarly, the court found that "visual signaling apparatus" is "meant to encompass imported items that actually (physically) convey a visual or a sound signal * * *." *Id.* at 43, 537 F. Supp. at 1277. Although sockets fall within the definition of "apparatus," *id.* at 44–46, 537 F. Supp. at 1277–78, they do not, by themselves, carry out the specified functions and therefore can not be classified as either "electric lighting equipment" or "visual signaling apparatus." *Id.* Neither may harnesses be so classified because they too are incapable, by themselves, of producing light or sound. *Id.* at 49, 537 F. Supp. at 1281.

It does not follow from *ITT*, however, as defendant argues, that to constitute "electro-medical apparatus," the articles in question here must be capable "of providing an electro-medical end result, such as monitoring the heart." Post Trial Brief For The United States at 14. Defendant cites nothing in the relevant legislative history, in any definition of "electro-medical apparatus" or in any evidence before the court to suggest such a requirement. In fact, the *Tariff Classification Study* for schedule 7, part 2 subpart B, in which item 709.17 appears, does not indicate that the articles covered must function alone as medical apparatus but rather states that they must be "used generally" in a medical context. 9 *Tariff Classification Study* 144 (1960)[5]; *but cf. ITT*, 3 CIT at 41, 537 F. Supp. at 1275 (legislative history to TSUS item for "electrical lighting equipment" states that the item covers " '*illuminating* articles' " and thus requires that article must have an "end functional result of *actual* illumination * * *") (supplying emphasis). In this case, the merchandise in question is designed to attach to the human body for one electro-medical function, and it is used only with electrocardiograph machines. Thus, this merchandise is undoubtedly "used" for medical purposes and the court will not impose defendant's narrow construction on TSUS item 709.17.

Inasmuch as the merchandise at issue is "electro-medical apparatus," it is irrelevant whether or not it is also parts of another electro-medical apparatus. If it were parts of a larger apparatus, Rule 10(ij) would not allow the merchandise to be classified under the "parts" provision of item 709.17, because a non-parts section of that same item specifically covers the merchandise.[6] Thus, the question here is not whether the merchandise is parts or apparatus but whether it is better classified under item 688.15 and 685.90 or under item 709.17; that is, not as "parts" but as "electro-medical apparatus" itself. Headnote 1(vi) provides the answer to this question. It is indicated that merchandise should not be classified under part 5 of schedule 6 if it is provided for in schedule 7. As indicated, the mer-

---

[5] Provisions dealing with medical instruments and appliances within schedules 2, 3, 4, 9, 12, 13 and 15 of the Tariff Act of 1930 were incorporated into schedule 7, part 2, subpart B. *See* 9 *Tariff Classification Study* at 102–03. Subpart B, medical and surgical instruments and apparatus, of schedule 7, part 2, "covers a wide variety of instruments and appliances *used generally* in professional practice for diagnosis, prevention, and treatment of diseases, the correction of deformities and defects, the repair of injuries, etc." 9 *Tariff Classification Study* 144 (1960) (emphasis added).

[6] Item 709.17, TSUS is sufficiently "specific" for purposes of Rule 10(ij). *See supra* note 2.

chandise is provided for in schedule 7 at item 709.17, TSUS. A more detailed analysis of the legislative history supporting this result is found in *Terumo Corp.* v. *United States,* 10 CIT 116, Slip Op. 86–19 (Feb. 21, 1986). Inasmuch as such history has been so recently and thoroughly discussed, it will not be repeated here.

Accordingly, the court holds that plaintiff has overcome the presumption of correctness applying to Customs' classification and has established that item 709.17, TSUS, is the proper classification for the EKG electrodes, pads, and strippers.