(C. D. 680)

AMERICAN ECLA CORPORATION *v.* UNITED STATES

United States Customs Court, Second Division

(Decided September 4, 1942)

*Puckhafer, Rode & Rode* (*Howard C. Carter* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*Richard E. FitzGibbon,* special attorney), for the defendant.

Before TILSON, KINCHELOE, and DALLINGER, Judges; TILSON, J., and KINCHELOE, J., concurring in the conclusion only

DALLINGER, Judge: These are suits against the United States, arising at the port of New York, brought to recover certain customs duties alleged to have been improperly exacted on particular importations consisting of machines and parts thereof. The parts contained in cases numbered 1, 3, 4, and 5 on the invoice accompanying

entry 810237 covered by protest 25177-K were assessed with duty at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930 as manufactures of metal not specially provided for. The balance of the merchandise was assessed with duty at the rate of 40 per centum ad valorem under paragraph 372 as textile machinery or parts thereof, or at the rate of 25 per centum ad valorem under said paragraph 372 as textile machinery or parts thereof, as that provision was modified by the trade agreement with the United Kingdom promulgated in T. D. 49753, 74 Treas. Dec. 253.

It is claimed that all of said merchandise is properly dutiable at the rate of 20 per centum ad valorem under paragraph 372 as modified by said trade agreement which covers—

\* \* \* \* \* \* \*

Textile machinery, finished or unfinished, not specially provided for, for textile manufacturing or processing prior to the making of fabrics or woven, knit, crocheted, or felt articles not made from fabrics (except worsted combs, bleaching, printing, dyeing, or finishing machinery, and machinery for making synthetic textile filaments, bands, strips, or sheets).

Alternatively, it is alleged that said merchandise is properly dutiable at the rate of 27½ per centum ad valorem under said paragraph 372 as machines or parts thereof not specially provided for. There is a further claim that the machine described as a vulcanizer on the invoice is properly dutiable at the rate of 20 per centum ad valorem under said paragraph 372 as modified by said trade agreement as an insulating machine. This case was originally decided by us on December 26, 1941, in the case of *American Ecla Corp.* v. *United States*, C. D. 574, and is again before us as the result of a rehearing granted the plaintiff on January 29, 1942.

At the hearing, held at New York City on June 9, 1941, the plaintiff offered in evidence the testimony of a single witness, Charles W. Pestalozzi, vice president of the plaintiff-corporation, who testified that the business of said corporation was the processing of knit goods; that the process in question consisted of spraying two fabrics assembled together with so-called latex for the purpose of making the resultant fabric elastic. The witness then described the process in question as follows:

We enter these knit goods into a large machine on an endless belt and spray a formula containing a certain amount of latex to those knit fabrics. Subsequently, we assemble two pieces of fabric together in a calender, after which this assembled cloth enters the vulcanizer, and subsequently to that the cloth is mounted on a stretching machine which has the purpose of eliminating what we call the shrinking side. In other words, when the fabrics are finally shipped they can be stretched and always will come back to the same width.

The witness then proceeded to testify in part as follows:

Q. Then what is done to the cloth after it has been prestretched?—A. After that, it is measured, finished, trimmed, packed, and shipped.

\* \* \* \* \* \* \*

Q. I now show you the invoice covered by Entry 789462, the subject of Protest 24007–K, and ask you whether or not you are familiar with the merchandise enumerated on that invoice?—A. Yes, sir.

\*       \*       \*       \*       \*       \*       \*

Q. Will you please state what the merchandise contained in Cases 1 to 19 was?—A. They were parts of a large machine which we built. They contained, first of all, chains which constitute what we term an endless belt on to which the fabric is mounted. They contained tanks for the latex solution; they contained covers with pressure gauge for those tanks.

\*       \*       \*       \*       \*       \*       \*

They contained some special tubes leading from the tanks to the spray gun equipment. They contained what we call an aspirator, which is a vent, an exhaust vent

\*       \*       \*       \*       \*       \*       \*

Q. In cases 20 and 21, what was that merchandise?—A. That is the vulcanizer machine.

Q. That is the machine which vulcanizes the fabric after it has been calendered and before the stretching process?—A. Yes.

Q. Those parts contained in Cases 1 to 19 are necessary parts to the operation of that first machine?—A. Yes.

Q. Would the machine operate without any of the parts?—A. No.

Q. I now show you the invoice accompanying Entry 810237 covered by Protest 25177–K. Are you familiar with the merchandise on that entry assessed at 40 per cent ad valorem and 45 per cent ad valorem?—A. Yes.

\*       \*       \*       \*       \*       \*       \*

Q. What is the merchandise contained in Case 1, assessed at 40 per cent ad valorem?—A. That is the stretching machine.

Q. The prestretching machine?—A. The prestretching machine.

Q. Which comes after the vulcanization and before the finishing process?—A. Yes.

Q. Also in Case 1, what is the merchandise assessed for duty at 45 per cent ad valorem?—A. The merchandise assessed at 45 per cent is part of the spray gun equipment.

Q. Is that part of the first machine?—A. Yes.

Q. Those are parts of the same machine as the merchandise that was covered by the previous entry, Entry 789462?—A. It is not attached to the machine, itself, but it is part of the process performed by the first machine.

Q. Will you please explain that further?—A. The spray gun equipment is brought to the first machine.

Q. Is it attached to the machine in any manner?—A. During the operation, it is.

Q. How is it attached?—A. By two arms which are fitted to the first machine.

Q. Will the first machine operate without the gun in position?—A. No.

Q. Are there ports or cavities in the machine for the fitting of the gun?—A. Yes.

\*       \*       \*       \*       \*       \*       \*

Q. In Case 3, what was the merchandise that was contained therein and assessed for duty at 45 per cent ad valorem?—A. This is also a part, a definite part, of the first machine. They are supports for the endless chain.

Q. How about the merchandise in Cases 4 and 5; what is that?—A. Those are the covers for the tanks containing the solution.

Q. What use is made of the tanks containing the solution?—A. The tanks are attached to the spray gun equipment.

Q. And that in turn is attached directly to the machine?—A. Yes.

    *        *        *        *        *        *        *

Q. You testified about a great number of parts contained in these various entries. With the exception of the first item on the invoice with Entry 835395, which is the last entry referred to, they are all parts of the machine which is called the pulverizer and sprayer or gun and other equipment attached thereto; is that correct?—A. Yes.

Q. The one part, which is that item on the invoice covered by Entry 835395 covered by protest 28593–K is part of the stretching machine, which machine is contained in Entry 810237 covered by Protest 25177–K; is that correct?—A. Yes.

Q. In any case will either of those machines operate without the parts which are covered by these invoices?—A. No.

Q. They are essential?—A. Yes.

Q. Necessary?—A. Yes.

On cross-examination the witness testified in part as follows:

X Q. Will you just explain the operation of the first machine, which is the pulverizer and sprayer? What does it do to the knit goods?—A. It applies certain quantity of the latex solution in a sprayer or atomizer form to the knit goods.

    *        *        *        *        *        *        *

X Q. It sprays this latex solution into the goods so it saturates it with it?—A. No; it leaves a certain coating on the fabric.

    *        *        *        *        *        *        *

X Q. Then it goes to the vulcanizing machine?—A. It first goes to the calender.

X Q. Will you please explain what happens there?—A. In the calender we assemble two lengths of the cloth sprayed in the first machine.

    *        *        *        *        *        *        *

X Q. So you now double up the thickness?—A. Yes.

X Q. And then it goes to the vulcanizer?—A. Yes.

X Q. And the two lengths of cloth are vulcanized together to form one?—A. Yes.

X Q. The latex material gives it a certain elasticity?—A. Yes.

X Q. You put it on a stretching machine then?—A. Yes.

X Q. None of these machines will knit material, will they?—A. No.

X Q. Or weave?—A. No.

X Q. They don't spin yarns?—A. No.

X Q. What is the material which you use, woven silk, wool, cotton?—A. Any textile fabric.

X Q. But it is a complete textile when you get it?—A. When we get it finished.

X Q. When you get it?—A. It is a complete fabric.

X Q. It is a complete fabric when you get it?—A. Yes, when it is delivered to us.

From this record it is plainly evident that all of the merchandise involved herein consists of textile machines or parts thereof, and as such are provided for in said paragraph 372 at the rate of 40 per centum ad valorem as textile machinery and parts thereof, unless that rate is reduced by virtue of the trade agreement between the United States and the United Kingdom (T. D. 49753) *supra*, wherein said rate has been reduced to 20 per centum ad valorem on—

*Textile machinery*, finished or unfinished, not specially provided for, for textile manufacturing or processing *prior to the making of fabrics or woven, knit, crocheted, or felt* articles not made from fabrics (except worsted combs, bleaching, printing, dyeing, *or finishing machinery*, and machinery for making synthetic textile filaments, bands, strips, or sheets)   [Italics ours.]

According to the uncontradicted evidence herein all of the instant machines operate upon fabrics after, and not before, said fabrics have been made and finished as such; and furthermore all of said machines are finishing machines as they perform the additional function of making said finished fabrics elastic.   For these reasons the said machines are expressly excluded from the last-quoted provision in said trade agreement, and they are therefore not entitled to the reduction in the rate of duty from 40 to 20 per centum ad valorem, as claimed by the plaintiff.

The second of the pertinent provisions in said trade agreement reads:

Textile machinery, finished or unfinished, not specially provided for, *and not provided for heretofore* in any item numbered 372 in this schedule (except worsted combs, machinery for making synthetic textile filaments, bands, strips, or sheets, looms, or bleaching, printing, dyeing, *and finishing machinery*, and not including any article of a class or kind with respect to which United States import duties have been reduced or bound against increase pursuant to any trade agreement heretofore concluded under section 350, Tariff Act of 1930, as amended).   [Italics ours.]

It will be observed that here again under the second provision just quoted "finishing machinery" is expressly excepted from the reduction of duty from 40 to 20 per centum ad valorem.

Inasmuch as counsel for the Government, in his brief filed herein, concedes that the articles represented by the items contained in cases 1, 3, 4, and 5 covered by protest 25177–K, and assessed with duty at the rate of 45 per centum ad valorem, are parts of textile machinery and as such are properly dutiable at the rate of 40 per centum ad valorem under said paragraph 372, the only question remaining to be considered is as to the claim of the plaintiff concerning the article described as a vulcanizer.   This is alleged to be entitled to a reduction from 40 to 20 per centum ad valorem under the provision in said trade agreement for "Braiding, lace braiding, and insulating machines, and all other similar textile machinery, finished or unfinished, not specially provided for."   In our opinion this claim is equally untenable.   By the very definition thereof an "insulating" machine must necessarily insulate the fabric against something; for instance, render it waterproof, heatproof, or nonconductive.   The present record contains no such evidence.   While it is true that counsel for the plaintiff state in their brief that latex is rubber, nevertheless the record shows that the only purpose for which latex is used is to make the final or resultant fabric elastic.

Upon the established facts we hereby sustain the claim of the plaintiff alleging that the articles described as supports de pistolets pour pulvérisation, raccord instantanes, raccord droits and goupillons on the invoice accompanying entry 810237 covered by protest 25177–K, and which articles were assessed with duty at the rate of 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930, are properly dutiable at the rate of 40 per centum ad valorem under paragraph 372 of said act as textile machinery and parts thereof not specially provided for. As to all other merchandise the claims of the plaintiff are overruled. Judgment will be rendered accordingly.