(C. D. 1421)

DOLPHIN JUTE MILLS v. UNITED STATES

United States Customs Court, Second Division

(Decided May 27, 1952)

*John D. Rode* for the plaintiff.
*Charles J. Wagner*, Acting Assistant Attorney General (*Richard H. Welsh*, special attorney), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge:   Certain imported sliver roll formers and sliver roll feed attachments were classified by the collector of customs as textile winding machine parts and duty was assessed thereon at the rate of 20 per centum ad valorem pursuant to the provisions of paragraph 372 of the Tariff Act of 1930 (19 U. S. C. § 1001, par. 372), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T. D. 51802, effective January 1, 1948, and supplemented by Presidential proclamation of June 11, 1948, 83 Treas. Dec. 223, T. D. 51939.

Plaintiff contends that said articles are not parts of winding machines but are parts of textile machines for manufacturing or processing vegetable fibers, except winding machinery, as provided in said paragraph, as modified and supplemented, *supra*, and therefore dutiable at 10 per centum ad valorem.

It is alternatively claimed by plaintiff that the provision modifying said paragraph 372, *supra*, by excepting winding machinery from the 10 per centum classification, was improperly applied to the instant case because it was not published until after the entry of the merchandise in question.   In view of the conclusion we have reached herein, this claim will not be considered.

The statutory provisions, so far as pertinent, read as follows:

Paragraph 372, Tariff Act of 1930:

\* \* \*   all other textile machinery, finished or unfinished, not specially provided for, 40 per centum ad valorem;   \* \* \*.

Paragraph 372, as modified by the General Agreement on Tariffs and Trade, reads:

| Tariff Act of 1930, paragraph | Description of products | Rate of duty |
|---|---|---|
| 372 | Textile machinery, finished or unfinished, not specially provided for (except looms and machinery for making synthetic textile filaments, bands, strips, or sheets): | |
| | For textile manufacturing or processing prior to the making of fabrics or woven, knit, crocheted, or felt articles not made from fabrics (except bleaching, printing, dyeing, or finishing machinery): | |
| | For manufacturing or processing vegetable fibers. | 10% ad val. |
| | Circular combs commonly known as "Noble" or "Bradford" combs. | 40% ad val. |
| | Other _____ | 20% ad val. |
| | *    *    *    *    *    *    * | |
| | Parts, not specially provided for, wholly or in chief value of metal or porcelain, of articles provided for in any item 372 of this Part: | |
| | Textile pins_____ | 20% ad val. |
| | Other _____ | The same rate of duty as the article of which they are parts |

The Presidential proclamation, T. D. 51939, *supra*, supplementing this modification, states in part as follows:

It will be noted that many of the rectifications of matter in Schedule XX cover typographical errors and obscurities in the original text of the general agreement which have been corrected in previous publications and others cover alterations of the original text which conform to the corresponding text heretofore proclaimed by the President. This proclamation does not fix any effective date for any rectification set forth in the protocol, each of which is to be applied as though it formed a part of the general agreement on October 30, 1947, and is to be applied as of the respective date heretofore specified in the pertinent proclamation of the President.

Said T. D. 51939 also provides under item 372 as follows:

In the thirteenth item 372:

(i) The immediate sub-description to which the Rate of Duty of "10% ad val." applies shall read:

"For manufacturing or processing vegetable fibers (except winding, beaming, warping and slashing machinery, and combinations thereof)"

At the trial it was agreed between the parties that "the imported articles are parts in chief value of metal, other than textile pins, of textile machinery, for textile manufacturing or processing prior to the making of fabrics or woven, knit, crocheted, or felt articles not

made from fabrics (except bleaching, printing, dyeing, or finishing machinery), for manufacturing or processing vegetable fibers * * *."

The only witness in the case, Oscar Schwartz, was called by the plaintiff. He testified that he was the secretary of the Dolphin Jute Mills (plaintiff) manufacturer of yarns, roves, and twines of jute and that he had been employed by said company for about 10 years. He stated that the parts in controversy were, after importation, "assembled and formed part and auxiliary part of a breaker or carding machine" at plaintiff's mill and were used in the process of making a roll out of an apron of carded jute or fiber coming from the carding machine.

A photograph illustrating a roll former was received in evidence as illustrative exhibit 1. Referring to illustrative exhibit 1, the witness described the function of the imported parts as follows:

The real function of this article commences at the point that the sliver departs from the trough on the breaker. It is drawn on this roll-effect and a roll is discharged eventually when it reaches a certain amount of pounds, sometimes as high as 40 or 50 pounds.

Q. In other words, the sliver is reeled upon these formers?—A. That is right.

Q. Then what becomes of the roll former and the sliver thereon?—A. Each one of these machines can hold an automatically discharged quantity of say four rolls before they have to be taken away. The function of the machine stops right there as it has no other function at all; just coils this stuff up.

Q. What becomes of the coil of sliver thereafter?—A. They are then put on a creel and run over drawing frames and a subsequent operation takes place until they finally go through two or three drawings ready for spinning.

Q. In other words, these machines and parts [are] used in the intermediate stages of your process?—A. That is correct.

The witness further testified that prior to the time when these roll formers were employed, the manufacturer used sliver cans which caught the sliver as it came off the apron of the machine; that roll formers were more convenient because the sliver cans required more space, held but a few pounds, and had to be continually replaced.

Schwartz testified that he was familiar with the term "winding" as used in his business; that plaintiff used winders in its mill, and that he had never heard of the imported articles "being used as a winder"; in other words, according to the witness, the process of putting sliver into the form of rolls was not a winding process.

Another photograph identified by the witness as a roll winder was received in evidence as illustrative exhibit 2. The witness described the function of this machine to wind finished or spun yarn into packages of varying sizes which when discharged from the machine were ready for packing and shipping.

A third photograph received in evidence as illustrative exhibit 3 was identified by the witness as a roll winder similar to that repre-

sented by illustrative exhibit 2 which he said was used to wind spun yarn; that he had never seen sliver wound on any machines like illustrative exhibit 3. It was pointed out by the witness that the roll winder represented by illustrative exhibit 3 was made by the same manufacturer who made the roll formers here under consideration.

The witness also testified in substance that he had never heard the process of rolling the sliver referred to as a winding process; that in the mill of his company there is a definite winding department; that different operators are employed on the rolling and winding machines; that whereas operators employed on rolling machines could not be used on the winding machines, the latter could, however, be used on rolling machines; and that the imported parts in controversy have no relationship to the processes of beaming, warping, or slashing machinery, which latter terms, he stated, applied to machines that treat the fabric or manufacture material into a fabric.

It may be noted in passing that a letter addressed to the clerk of the court by counsel for the defendant reads as follows:

In view of the record, Bureau letter 434.2, 12/13/49, and C. I. E. 486/49, no brief on behalf of the United States will be filed herein.

We have not been afforded copies of the letters referred to in the above quotation and have not been informed of their contents.

Upon the uncontroverted facts of record, we are satisfied that the term "winding * * * machinery" applies to machines which wind yarn, for instance, and not to machines of the type here in controversy. This conclusion finds support in the Trade Agreement Digests, volume 111, part 3, page 39, which were published in connection with the negotiations for the General Agreement on Tariffs and Trade, *supra*, and in which the following statements appear:

After yarn has been produced, it is frequently processed further before it is made into fabric. These processes vary in their nature and extent according to the yarn and to the type of fabric to be produced. Chief among the processes are winding, warping, beaming, and slashing, which are frequently continuous processes, the yarns passing directly from one machine to the next. The winder rewinds the yarn from the spinning-frame bobbins into (1) hanks or skeins for dyeing, or (2) on cones, bobbins, or other forms for dyeing or for use in looms, knitting, and other machines.

We, therefore, find and hold that the articles in controversy are parts of textile machines for manufacturing or processing vegetable fibers (except winding machinery) within the provisions of paragraph 372, as modified and supplemented, *supra*, and are properly dutiable at the rate of 10 per centum ad valorem, as alleged by plaintiff. That claim in the protest is sustained; all other claims are overruled.

Judgment will be entered in accordance with the views above expressed.