(C.D. 2294)

NATIONAL CARLOADING CORPORATION *v.* UNITED STATES

United States Customs Court, Second Division

(Decided November 8, 1961)

*Wallace & Schwartz* (*Joseph Schwartz, Earl R. Lidstrom,* and *Barnes, Richardson & Colburn* of counsel) for the plaintiff.

*William H. Orrick, Jr.,* Assistant Attorney General (*Sheila N. Ziff* and *Henry J. O'Neill,* trial attorneys), for the defendant.

Before LAWRENCE, RAO, and FORD, Judges

LAWRENCE, Judge: Plaintiff imported a device described in the record as a presetting machine, together with vacuum equipment and spare parts.

The collector of customs classified the merchandise as textile finishing machinery and imposed duty thereon at the rate of 20 per centum ad valorem pursuant to the provisions of paragraph 372 of the Tariff Act of 1930 (19 U.S.C. § 1001, par. 372), as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802.

Plaintiff claims that the importation should be classified as textile machinery for processing vegetable fibers prior to the making of fabrics and dutiable at the rate of 10 per centum ad valorem in said paragraph 372, as modified, *supra,* supplemented by Presidential proclamation, 83 Treas. Dec. 223, T.D. 51939; or as "other" textile machinery and dutiable at the rate of 15 per centum ad valorem, as provided in said paragraph 372, as modified by the General Agreement on Tariffs and Trade, *supra.*

The pertinent text of paragraph 372 of the Tariff Act of 1930, as modified and supplemented, *supra,* reads as follows:

Textile machinery, finished or unfinished, not specially provided for (except looms and machinery for making synthetic textile filaments, bands, strips, or sheets):

| | | |
|---|---|---|
| For textile manufacturing or processing prior to the making of fabrics or woven, knit, crocheted, or felt articles not made from fabrics (except bleaching, printing, dyeing, or finishing machinery): | | |
| For manufacturing or processing vegetable fibers (except winding, beaming, warping and slashing machinery, and combinations thereof) | 10% ad val. | |
| *     *     *     *     *     *     * | | |
| Other | 20% ad val. | |
| Bleaching, printing, dyeing, or finishing | 20% ad val. | |
| Other | 15% ad val. | |

At the trial, the following exhibits were introduced in evidence:

Plaintiff's illustrative exhibit 1, photograph of the imported machine.

Plaintiff's illustrative exhibit 2, photograph of the machine in use.

Defendant's exhibit A—leaflet printed by Bellfour, the manufacturer of the machine in Germany, printed in German with English translation in parallel columns.

John Fenley, sales manager of Paramount Textile Machinery, the actual importer of the merchandise in controversy, testified on behalf of the plaintiff.

The substance of his testimony is that his company manufactures and sells hosiery, drying and finishing equipment, and other parts, including orthopedic brace parts. He has been with the company 22 years and, during the past 11 years, he has been sales manager. His duties as sales manager include the merchandising of equipment manufactured by his company, as well as that imported by the company. He stated that he is familiar with the character and use of the equipment sold by his company; and that the machine in controversy was sold to the Bearbrand Hosiery Co., Kankakee, Ill., where it is used to twist, set, and condition yarn by impregnating the spools of yarn with moisture, which has the desired effect of shrinking the yarn, removing wildness, and eliminating static.

In the opinion of Fenley, finishing operations are those involved after dyeing of the completed fabric; that presetting is prior to dyeing and is not a finishing operation; that the presetting machine has use in cotton mills for conditioning and twist setting yarns before anything else is done to the yarn, whereas finishing operations are done after the yarn is woven, knitted, or dyed. He referred to dyeing, bleaching, mercerizing, and printing as examples of finishing operations.

It appears from the record that the subject machinery is the only shipment of its kind to ever have been imported. Presetting machines of a similar nature are manufactured by the Paramount company, which differ in some structural features from the imported machine. However, both types of machines are used in cotton yarn mills to perform the presetting process above referred to.

The witness described the process of mercerizing of thread used in the production of hosiery as a finishing operation performed prior to dyeing. He testified that his company manufactures drying and finishing equipment for hosiery, which is different from the imported machine. The finishing machines which are manufactured by his company are known as preboarding machines in which stockings are placed and subjected to steam pressure and heat. While Fenley recognizes that mercerizing is a finishing operation, it differs from the presetting operation, in that mercerizing involves the introduction of yarn to a chemical bath, incorporating water and heat.

It was admitted by the parties that the imported device is, in fact, textile machinery, and it was also agreed that the merchandise is not bleaching, dyeing, or printing machinery.

In view of the uncontradicted testimony that the imported device is used in a cotton mill to twist, set, and condition yarn after it has been spun and wound on cones, by impregnating the yarn with moisture, which is accomplished by alternating steam pressure and vacuum pressure, it is not within the language relied upon by plaintiff as "textile machinery * * * For manufacturing or processing vegetable

fibers." When vegetable fibers are processed and spun into yarn, they lose their identity as fibers and become a new and distinct article of commerce, specifically known as yarn.

Plaintiff, in its brief, refers to the following cases:

*American Ecla Corporation* v. *United States*, 9 Cust. Ct. 153, C.D. 680.

*Dolphin Jute Mills* v. *United States*, 28 Cust. Ct. 268, C.D. 1421.

*The A. W. Fenton Co., Inc., et al.* v. *United States*, 34 Cust. Ct. 202, C.D. 1705.

In the *American Ecla* case, *supra*, certain machinery, which operates upon textile fabrics after the latter have been finished, for the purpose of making them elastic, was held to be finishing machines operating on completely woven or knitted fabrics, and was excluded from the benefits of the British Trade Agreement, which granted certain preferential rates to other than "finishing machines." We find nothing in that case to support the claim of plaintiff here that the imported machinery is used "for manufacturing or processing vegetable fibers." In the *Dolphin* and *Fenton* cases, above cited, the merchandise consisted of breaker or carding machines and certain rollers used as parts of drawing frames for the treatment of fibers, which the court held classifiable as machinery for processing vegetable fibers. Here, however, we are dealing with a machine which is not used to process fibers but to process a yarn made from fibers.

Upon the primary issue whether the imported device is finishing machinery, the probative value of the testimony of the witness Fenley is greatly weakened by the fact that his understanding of what constitutes a finishing operation is limited in the main to his experience observing the use of presetting machines in hosiery fabricating plants. The subject machine is solely used in cotton yarn mills. Hosiery mills produce a woven fabric while yarn mills produce yarn which is later woven into fabrics. Obviously, a finishing operation on a fabric would be different from a finishing operation applied to yarn with the use of a presetting machine.

The Government, in its brief, invites our attention to the following cases which throw some light on the statutory meaning of the words "finishing machinery":

*United States* v. *American Textile Engineering, Inc.*, 26 C.C.P.A. (Customs) 48, T.D. 49597.

*Brandon Corporation* v. *United States*, 31 C.C.P.A. (Customs) 149, C.A.D. 266.

In the *American Textile* case, *supra*, the court held that a hygrolit machine used in the process of steaming yarn and spraying it with a hygrolit solution, a process which changed the character of the yarn giving it elasticity, strengthening it, and lessening its tendency to kink by setting the twist, was textile machinery. The importance

of this case lies in what was said about it in the *Brandon* case. The court was there concerned with the question whether certain looms and parts thereof used to weave papermaker's fabrics and dryer felts or mats from cotton or asbestos yarn, should be classified as "Textile machinery * * * for textile manufacturing or processing prior to the making of fabrics * * *" or as "* * * all other textile machinery, finished or unfinished, not specially provided for, * * *." The court, in an elaborate opinion, drew the distinction between textile machinery for textile manufacturing or processing prior to the making of fabrics and textile machinery used in the manufacture of fabrics.

The court cited the "Glossary of Textile Terms," 1921, by H. P. Curtis, as authority for its statement that "Finishing machinery is used to give 'handle, weight, strength, appearance, lustre, or some other property' to woven fabrics." The court also quoted the same authority for the following definition of the word "finisher":

> The name of a machine used by spinners for the further removal of impurities from cotton following the scutcher and preceding the carding engines.

The court then went on to say, "There are also machines for finishing or conditioning yarns. For example, hygrolit machines are used to spray yarn with a so-called 'Hygrolit solution' for the purpose of conditioning or preparing the yarn for use in knitting or weaving and giving it elasticity and strength. The use of the solution also lessens the tendency of the yarn to kink by 'setting the twist,'" citing *United States* v. *American Textile Engineering, Inc., supra.*

The court found it unnecessary, in the *Brandon* case, to determine the meaning of the term "finishing machinery," as ordinarily used in tariff statutes, but said, "Those terms are used in the textile art in the manner hereinbefore stated." The court was obviously aware of the fact that there are textile finishing machines for processing or conditioning yarns as well as for processing or conditioning fabrics.

Witness Fenley included printing, bleaching, mercerizing, and dyeing as fabric finishing operations, although the statute, paragraph 372, would indicate that they are separate textile processes, which is corroborated by such standard reference works as the "Cyclopedia of Textile Work," Chicago American Technical Society, 1917; "The Textile Industries," 1912; and "The Encyclopaedia Britannica," fourteenth edition, 1929.

Reference is made in the defendant's brief to Julius Zipser's book, entitled "Textile Raw Materials and Their Conversion into Yarns," second edition revised and partly rewritten by D. T. Nisbet, 1921, which states that "there are always four principal stages in the process of manufacturing raw spinning material into yarn, *viz.*: A. Preparation. B. Roving. C. Spinning. D. Finishing."

Also contained in Zipser's text, the following appears on the subject of finishing of yarn:

This process comprises all the operations to which the yarn has to be subjected after it has been spun. Some of these operations have no modifying influence on the yarn, and are carried out for the sole purpose of classifying the product according to various standards, reeling, numbering, and testing it for quality and suitability; whilst others have for their object the production of novel and more effective combinations, e.g., making twists or fancy yarns from singles; others again are for finishing, preserving and improving the yarn; and finally comes the task of packing for shipment.

Upon the facts of record and for the reasons stated, we are of the opinion that the plaintiff has failed to overcome the presumption of correctness which attaches to the decision of the collector. The protest is overruled on all grounds and judgment will issue accordingly.