SHAW INDUSTRIES, INC., et al., Plaintiffs,

v.

UNITED STATES, Defendant.

Court No. 79–8–01282.

United States Court of International Trade.

Nov. 8, 1982.

coating textile filaments, yarns, fabrics or made-up textile articles (including laundry and dry-cleaning machinery), and part of such machinery:

Powell, Goldstein, Frazer & Murphy, Atlanta, Ga. (Mark R. Eaton, Atlanta, Ga., on the briefs), Busby, Rehm & Leonard, Washington, D.C. (John B. Rehm, Washington, D.C., on the briefs), for plaintiffs.

J. Paul McGrath, Asst. Atty. Gen., Washington, D.C., Joseph I. Liebman, Atty. in Charge, Intern. Trade Field Office, Commercial Litigation Branch, New York City (Madeline B. Kuflik, New York City, on the brief), for defendant.

Classified:

| | | |
|---|---|---|
| 670.43 | Other ........................ 8% ad val. | |
| | Machinery: | |
| 06 | Clothes dryers ............ No. | |
| 14 | Other household and Laundry type machinery ............... No. | |
| 18 | Other machinery: Bleaching, dyeing, washing, and cleaning machines ........ No. | |
| | Finishing, dressing coating, and drying machines: | |
| 27 | Transfer printing machines for textiles .............. No. | |
| 28 | Other ............... X | |

Claimed:

| | | |
|---|---|---|
| 670.12 | Textile reeling or winding machines; textile beaming, warping, or slashing machines, and other textile machines for preparing yarns to be woven, knit, braided, or otherwise made into textile fabrics or other textile articles ....... 7% ad val. | |
| 20 | Reeling or winding machines ... No. | |
| 40 | Other ..................... No. | |

**LANDIS, Judge:**

This action is before the court for decision on stipulated facts, both plaintiffs and defendant having filed briefs. Plaintiffs have argued to reclassify certain merchandise known as the *Superba* TVP yarn processing machines (*Superba*). Defendant filed a brief in response to plaintiffs argument and plaintiffs filed a brief in reply thereto. The court signed and ordered filed the stipulation of facts relating to the imported merchandise.

The pertinent statutory provisions, found in the Tariff Schedules of the United States (TSUS) Schedule 6, Part 4, Subpart E, are as follows:

### SCHEDULE 6.—METALS AND METAL PRODUCTS

### Part 4.—Machinery and Mechanical Equipment

### Subpart E.—Textile Machines; Laundry and Dry-Cleaning Machines; Sewing Machines

Classified:

Machinery for washing, cleaning, drying, bleaching, dyeing, dressing, finishing or

General Headnotes and Rules of Interpretation:

Rule 10(c) which reads in pertinent part:

(c) an imported article which is described in two or more provisions of the schedules is classifiable in the provision which most specifically describes it.

Rule 10(d) which reads in pertinent part:

(d) If two or more tariff descriptions are equally applicable to an article such article shall be subject to duty under the description for which the original statutory rate is highest, and, should the highest original statutory rate be applicable to two or more of such descriptions, the article shall be subject to duty under that one of such descriptions which first appears in the schedules.

The major issues presented for decision are whether the *Superba* is a textile machine for preparing yarns to be woven or otherwise made into textile fabrics or textile articles; whether the *Superba* constitutes other machinery for finishing textile filaments or yarns; or, if the *Superba* constitutes both a preparer and finisher of yarns under TSUS, which tariff provision more specifically describes it.

Plaintiffs' sole claim is that the *Superba* is a textile machine used to prepare yarns to be made into other textile articles. Defendant's sole contention is that the *Superba* is a machine designed to finish textile yarns. A review of the stipulation indicates that there are no material facts to be tried and that the issues presented involve only questions of law to be properly decided by the court without a full trial on the merits. *Farr Man and Co., Inc. et ano. v. The United States,* 544 F.Supp. 908, 4 Ct.Int'l. Trade —— (1982); *Schoenfeld & Sons, Inc. v. United States,* 3 Ct.Int'l. Trade ——, Slip Op. 82–33 (April 30, 1982).

The underlying stipulation indicates that the *Superba,* a product of France, was classified pursuant to TSUS item 670.43 although plaintiffs' claim proper classification to be pursuant to TSUS item 670.12. The *Superba* employs a wet steam application to process yarn. The *Superba* processes yarn which is used exclusively in the manufacture of tufted carpet. Carpeting yarn is composed of several separate strands of fibers, usually of synthetic nylon fibers, which are twisted and joined together (plied).

Once the twist has been applied and the separate strands plied, a heat-setting process is necessary in order to "lock in" or "set" the twist and the ply. The "locking" or "setting" of the twist and the ply gives the yarn a definitive dimensional stability, produces a uniform and consistent yarn for carpet, gives the yarn a fuller appearance and allows the yarn to maintain its surface appearance despite the normal wear and tear which is applied to carpets.

The *Superba* provides a continuous, labor-saving method of heat-setting and thereby locking-in the twist and the ply through the controlled application of wet steam. The object of the heat setting is mainly:

a. to set definitely the twist of the yarn (the yarn after heat setting must behave like a steel spring);

b. to improve the dyeing affinity of the fibre;

c. to set the texturation crimp of the fibre;

d. to level eventually the dyeing affinity of the yarn, affinity which can be irregular further to a thermic process (hot air);

e. to develop to a maximum the bulk of the yarn and to give it thus the greatest possible "covering" power.

After the heat setting by the *Superba* the yarn is fully *prepared* for use in the carpet manufacturing process as the heat setting by the *Superba* is the *last* processing step performed upon the yarn.

The stipulation states that the *Superba* exposes the yarn to no chemicals that dye, bleach, dress, or coat the yarn in any fashion nor is it designed or used to clean or wash the yarn in any manner. The operation of the *Superba* involves the application of wet steam to the yarn and through a continuous heat-setting process the yarn is returned to its dry state.

■ Under well established Customs' jurisprudence, plaintiffs shoulder the dual burden of proving that the classification by Customs is erroneous and that its claimed classification is correct. *Hawaiian Motor Company v. United States,* 82 Cust.Ct. 70, C.D. 4790, 473 F.Supp. 787 (1979), aff'd, 67 CCPA 42, C.A.D. 1241, 617 F.2d 286 (1980); *Merry Mary Fabrics, Inc. v. United States,* 1 Ct.Int'l Trade 13 (1980). Thus, it is insufficient that plaintiffs merely demonstrate that its claimed classification is correct. There must be an additional showing that Customs' classification is erroneous. Without both, plaintiffs cannot succeed. It is against this background that the court reviews the relevant classifications herein.

A review of the competing statutes, TSUS items 670.12 and 670.43, indicates the precise elements necessary for classification of the particular merchandise of this action.

TSUS item 670.12 requires that the *Superba* be (1) a textile machine, (2) used to prepare yarns that, (3) are to be made into textile articles or fabrics. Also the *Superba,* based upon its description and functions in paragraph fourteen (14) of the stipulation, is not a reeling or winding machine

and therefore, if classifiable under TSUS item 670.12 would be under the *other* category.

For classification pursuant to item 670.43 the *Superba* must be (1) textile machinery, (2) for finishing, (3) yarns.

There is no dispute that the *Superba* constitutes textile machinery as both TSUS items, classified and claimed, fall under the headnote for Subpart E, Textile Machines . . . . Likewise, there is no dispute that the subject matter processed by the *Superba* is yarn.[1]

In examining item 670.12 the court finds that the *Superba* meets all qualifications for classification thereunder. It is a textile machine. It prepares yarn, Stipulation paragraph ten (10). The yarn prepared by the *Superba* is used exclusively in the manufacture of tufted carpet which unarguably is a textile article. Thus, the *Superba* satisfies the three previously enumerated parameters necessary for classification under item 670.12 and plaintiffs therefore have satisfied one half of their burden by showing their claimed classification is correct.

■ Turning to Customs' classification pursuant to 670.43 it is noted that a presumption of correctness favors Customs' classification. *Atlantic Aluminum & Metal Distribution, Inc. v. United States,* 47 C.C.

P.A. 88, C.A.D. 735 (1960); *J.E. Bernard Co. v. United States,* 81 Cust.Ct. 60, C.D. 4766 (1978); 28 U.S.C. § 2639. As aforementioned in the discussion of classifying the *Superba* pursuant to item 670.12 there is no dispute that it is a textile machine which processes yarn. This satisfies two of the three qualifications for classification under item 670.43. The only remaining qualification is whether the *Superba* is used for finishing yarn.

The Stipulation is silent as to the use of the term finishing *per se.* However, the Stipulation does state that, "The heat setting by *Superba* is the *last processing step performed upon the yarn.*", Stipulation paragraph ten (10) (emphasis supplied). Plaintiffs argue that the *Superba* process is merely an intermediate or preparing process in the overall manufacturing scheme of carpeting. In this light their basic contention is that the *Superba* does nothing as to the creation of yarn as the yarn is complete *per se* before undergoing the *Superba* process. In support of this plaintiffs point to several definitions found in various lexicons.[2] Plaintiffs argue that defendant misconceives the definition of finishing as finishing applies to fabric or cloth of which yarn is neither.

---

1. Stipulation paragraphs five (5) and six (6).

2. Actually, plaintiffs attack the lexicographic definitions cited by defendant and attempt to turn-the-tables by showing these definitions actually support plaintiffs' position.

The first definition is found in Linton, *The Modern Textile and Apparel Dictionary* (4th Revised Enlarged Edition, 1973) at p. 208:

FINISHING. 1. The art and science of making materials presentable to the consuming public. Cloth is converted from the grey goods state, as it comes from the loom, into a fair, medium, good, or excellent material ready for usage. Textile fabrics are 'made in the finishing,' since there has never been a perfect yard of cloth, free from defects of some sort, woven. Finishing takes care of these defects in the goods. 2. *The final processing,* such as bleaching, dyeing, pressing, printing, water-proofing. 3. The steps in the treatment of rayon or acetate from the time it is spun to its final form for shipment to the user—washing, stretching and drying or storing, twisting, and spooling—when cakes are not used—reeling and lacing, resulpherizing, washing, bleaching, drying, sorting and grading, packing, etc. 4. *Generally speaking, the final operation in any process of manufacture.*

The second set of definitions are found in *Webster's Third New International Dictionary,* Unabridged (1968) at ps. 853 and 854.

1. *finish:* 1a. to bring to an end: arrive at the end of: TERMINATE, COMPLETE

c. to serve as the close or last item of 2a. to expend the final labors on: bring to completion or issue

h(1). to give (cloth) special characteristics that improve appearance and usefulness by processing (as mercerizing, fulling, calendering, embossing)

2. *finish:* f. the final treatment or coating of a surface.

*Finishing.* The act or process of completing: the final work upon or ornamentation of a thing: *specif:* the processing applied to cloth after it is taken from the loom.

Plaintiffs attempt to make the further argument based on the doctrine of *noscitur a sociis* that the term finishing is used in direct conjunction with the word coating in item 670.43. Thus, plaintiffs try to show that the wording in item 670.43 either implies a specific function to achieve a desired result (washing, cleaning, drying) or a chemical change to the yarn (bleaching, dyeing, dressing, finishing).

Plaintiffs further argue that legislative history shows that item 670.43 was not intended to cover a machine like the *Superba.* Specifically they make reference to *The Tariff Classification Study Explanatory and Background Materials,* concerning Subpart E of Part 4 of Schedule 6: Vol. 6, p. 267.[3] Simply put, plaintiffs contend that since yarn is created early on in the overall manufacturing process of carpeting it should be classified in the early stages of Subpart E and not in the later stages thereof. Plaintiffs, naturally, are assuming that it is overall textile production of carpeting and not yarn that is in issue.

■ Plaintiffs first argument that finishing applies to fabric, cloth or the production of completed textile articles is at the outset quite convincing in view of the various lexicographic definitions. However, the primary source for the meaning of a statute must be derived from the wording of the statute itself. *Andrus v. Allard,* 444 U.S. 51, 100 S.Ct. 318, 62 L.Ed.2d 210 (1979); *The United States v. H. Rosenthal Co.,* 67 C.C.P.A. 8, C.A.D. 1236, 609 F.2d 999 (1979). Item 670.43 specifically mentions yarn along with other stages of textile production. It also specifically mentions a wide variety of different processes varying from the use of water and heat to chemical applications. There is *no* differentiation as to what process is applicable to what stage of production or vice-versa. Therefore, yarn as well as fabric or cloth or completed tex-

tile articles may all be subject to a finishing process. Nothing in the evidence of record indicates that yarn cannot be subject to a finishing process.

The fact that yarn may be subject to a finishing process is further borne out by reference to several cases cited by plaintiffs and defendant. In *National Carloading Corporation v. United States,* 47 Cust.Ct. 144, C.D. 2294 (1961), cited by plaintiffs and defendant, the court stated at 147, "Obviously, a finishing operation on a fabric would be different from a finishing operation applied to yarn". The implication is manifest that yarn may be subject to a finishing operation although a different finishing operation than fabric.

Similarly, in a case cited by defendant, *United States v. American Textile Engineering, Inc.,* 26 C.C.P.A. (Customs) 48, T.D. 49597 (1938) the court stated: "There are also machines for finishing or conditioning yarns". True, *American Textile* involved a chemical type of finishing but nonetheless it does indicate that yarns are capable of being subject to a finishing process.

Plaintiffs attempt to narrow the scope of item 670.43. However, the clear wording of that statute indicates a contrary legislative intent. The finishing process can apply to any stage of production, whether it be from the initial production of textile fibers to be spun into yarn or whether it be on the finalized textile product.

Plaintiffs' subsequent argument based upon the doctrine of *noscitur a sociis* is meritless. The various processes stated in item 670.43 are used in the disjunctive. All stand alone without affinity to the others. There is no basis for associating finishing with coating other than that they are both processes. There is no rational reason to associate finishing with coating more than associating finishing with washing, clean-

---

**3.** This classification study in pertinent part reads: "The proposed provisions of this subpart do not involve any significant rate changes. It is believed, however, that the provisions have been clarified by better organization and certain changes in language. In general, the provisions in this part for machines are organized so that they parallel to the extent possible, the organization of the provisions for textile fibers and textile products in proposed Schedule 3. In other words, the machines are provided for to the extent possible in the order of their use in the production of textile articles."

ing, etc. The *Superba* process is a specific function employed to achieve a desired result as it sets the twist of the yarn and the texturation crimp of the fibre along with other results. (Stipulation paragraph nine (9)).

Plaintiffs' final argument that the legislative history of *Subpart E* precludes classification of the *Superba* in item 670.43 is misguided. The key phrase in the legislative history cited by plaintiffs [4] states: "In other words, the machines are provided for *to the extent possible* in the order of their use in the production of textile articles." (Emphasis supplied).

Reviewing *Subpart E* it is evident that it follows the format indicated in the legislative history. Thus, the headnote for items 670.02 through 670.06 deals with preparing fibers for spinning, etc. This is generally the earliest stage in the manufacturing process. This is followed by the headnote governing 670.12 which deals with the preparing of yarns for weaving and various other functions. The following headnote governs item 670.14 through 670.29 and relates to weaving machines, where cloth and fabric are produced from yarn. The next headnote deals with felt and other specialty items which do not bear on this case.

■ Immediately following is the headnote here in issue which under a normal progression would deal only with finishing or other operations on the manufactured fabric or textile article. But here is where there is a departure from the sequence and the legislative history. Congress also included prior stages of production such as filaments and yarns to be subject to the various processing methods. It is axiomatic that Congress is presumed not to have used superfluous words in a statute. *Ameliotex, Inc. v. United States,* 65 CCPA 22, C.A.D. 1200, 565 F.2d 674 (1977). The court cannot ignore the words filaments and yarns in item 670.43. No convincing arguments are set forth to the effect that yarn cannot be subject to a finishing process.

While it is true that yarn goes into the *Superba,* and yarn comes out of the *Superba,* the yarn that exits has different physical properties that are visually apparent. (Stipulation paragraph eight (8), "gives the *yarn* a fuller appearance and allows the *yarn* to maintain its surface appearance . . . ." emphasis supplied; Stipulation paragraph nine (9) generally). The yarn is not complete for its intended use until it undergoes the *Superba* process.

■ Essentially, the *Superba* advances the yarn in condition *creating* a specific type of yarn with physical properties different from those of the yarn entering the *Superba.* This process is performed only before the yarn undergoes any carpet manufacturing process. Only after the *Superba* process is the yarn ready for use in the carpet manufacturing process. Stipulation paragraph eleven (11). This *specific yarn* required for carpeting is therefore finished (the last processing step, Stipulation paragraph ten (10)) by the *Superba* process.

Defendant has demonstrated that the *Superba* is a finishing machine relative to the yarn in issue classifiable under item 670.43. Plaintiffs have failed to prove otherwise but have shown that the *Superba* may also be considered a preparing machine classifiable under item 670.12. Where an imported article is described in two or more provisions of the tariff schedule it should be classified in the provision which most specifically describes it. General Interpretive Rules, Rule 10(c).

■ Reviewing the competing TSUS items the court finds that item 670.43 more specifically describes the *Superba* than item 670.12. A machine may only be considered a finishing machine where it performs the last or final process during a particular stage of production. Thus the number of finishing machines is limited in scope to the number of stages of production (filaments, yarns, fabrics, etc.).

■ Conversely, a machine may be considered a preparing machine during *any phase of any stage of production* in which it

---

**4.** See footnote 3, infra, for text of the complete    pertinent section.

performs its function. It may be the initial phase, second phase or any other phase in a given stage of production. Thus, the possible number of preparing machines is infinitely large in comparison to the possible number of finishing machines.

 Realizing the above comparisons it is at once apparent that finishing machines belong to a much smaller set of machines than preparing machines. Thus, it is more difficult to satisfy the criteria for classification as a finishing machine than it is to satisfy the criteria for a preparing machine. Therefore, where a textile machine may be classified as both a preparing machine pursuant to item 670.12 and a finishing machine pursuant to item 670.43, the machine should be classified as a finishing machine since item 670.43 is more difficult to satisfy and consequently more specifically describes the machine. Furthermore, it is settled that where two or more tariff descriptions are equally applicable to an article, such article shall be subject to duty under the description for which the original statutory rate is highest. General Interpretive Rules, Rule 10(d).

*Conclusion*

Plaintiffs have failed to overcome the presumption of correctness that favors Customs' decision regarding classification of the *Superba* in item 670.43 and consequently have not met their dual burden of proving Customs' classification erroneous and their claimed classification correct. *Hawaiian Motor Company v. United States, supra; Merry Mary Fabrics, Inc. v. United States, supra.* Plaintiffs have demonstrated that the *Superba* could be classified under item 670.12.

Defendant has demonstrated that the *Superba* is a finishing machine relative to the yarn in issue. Although the *Superba* can be viewed both as preparing yarns and finishing yarns, it is correctly classified as a finishing machine for yarns under item 670.43 since that tariff provision most specifically describes the merchandise pursuant to the General Interpretive Rules, Rule 10(c). Additionally, where two or more tar-

iff descriptions are equally applicable to an article, such article shall be subject to duty under the description for which the original statutory rate is highest. General Interpretive Rules, Rule 10(d).

Accordingly, the classification by the United States Customs Service is affirmed and the relief sought by plaintiffs is, in all respects, denied and the complaint is dismissed.

Judgment will enter accordingly.