CLAIROL, INC., PLAINTIFF v. UNITED STATES, DEFENDANT

Court No. 79-10-01603

Before: LANDIS, *Senior Judge.*

(Decided June 21, 1984)

*Freeman, Wasserman & Schneider* (*Bernard J. Babb* and *Philip Yale Simons* on the briefs) for the plaintiff.
*Richard K. Willard,* Acting Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, (*Deborah E. Rand* on the briefs), for the defendant.

LANDIS, *Senior Judge:* This action is before the court on cross-motions for summary judgment. The merchandise, imported by the plaintiff at the Port of New York, is an electrically operated hand-held cosmetic device known as the "Tender Tweez".

The Customs Service classified the merchandise under items 807 and 649.91 of the Tariff Schedules of the United States, (TSUS), as modified by T.D. 68-9, as "tweezers" and assessed duty at the rate of 18.5% *ad valorem.*

Plaintiff claims that the imported merchandise is properly classifiable under the provisions of items 807 and 683.32, TSUS, as modified by T.D. 68-9, as "other electro-mechanical appliances * * * with self-contained electric motors * * * used in the household, hotels, restaurants, offices, schools, or hospitals * * * Other", dutiable at the rate of 6% *ad valorem.* Alternatively, plaintiff claims that the merchandise in issue is classifiable under the provisions of items 807 and 678.50, TSUS, as modi-

fied by T.D. 68–9, as "Machines not specially provided for", dutiable at the rate of 5% *ad valorem.*

The pertinent tariff provisions involved herein are the following:

## SCHEDULE 6.—METAL AND METAL PRODUCTS

\*　　\*　　\*　　\*　　\*　　\*　　\*

### PART 3.—METAL PRODUCTS

#### SUBPART E—TOOLS, CUTLERY, FORKS, AND SPOONS

*Classified:*

| Item | Article | Rates of Duty |
|---|---|---|
| 649.91 | Cuticle or corn knives, cuticle pushers, nail files, nail cleaners, nail nippers and clippers, all the foregoing used for manicure or pedicure purposes, and parts thereof; tweezers..................... | 18.5% ad val. |

### PART 4.—MACHINERY AND MECHANICAL EQUIPMENT

\*　　\*　　\*　　\*　　\*　　\*　　\*

#### SUBPART H—OTHER MACHINES

*Alternatively Claimed:*

| | | |
|---|---|---|
| 678.50 | Machines not specially provided for, and parts thereof .. | 5.0% ad val. |

### PART 5.—ELECTRICAL MACHINERY AND EQUIPMENT

Vacuum cleaners, floor polishers, food grinders, and mixers, juice extractors and other electro-mechanical applicances, all of the foregoing with self-contained electric motors of types used in the household, hotels, restaurants, offices, schools, or hospitals (but not including factory or other industrial appliances or electro-thermic appliances) and parts thereof.

\*　　\*　　\*　　\*　　\*　　\*　　\*

*Claimed:*

683.32　　Other............................................ 6.0% ad val.

The basic issue presented is whether it is the statutory intent of TSUS item 649.91 to exclude articles powered by electricity, thereby barring the electric tweezers here in issue from an *eo nomine* classification as tweezers.

This court on numerous occasions has held that relief granted pursuant to a summary judgment motion is a drastic remedy. *Carson M. Simon & Co.* v. *United States,* 3 CIT 4 (1982); *Yamaha International Corp.* v. *United States,* 3 CIT 108 (1982). Further, in a summary judgment motion the fundamental issue before the court is fact finding not fact determination. *Heyman* v. *Commerce and Industry Insurance Company,* 524 F.2d 1317 (2d Cir. 1975). It would be improper for a court to grant judgment upon a motion for summary judgment where material issues of fact exist or, are to be tried. *S. S. Kresge Co.* v. *United States,* 77 Cust. Ct. 154, C.R.D. 76–6 (1976); *Schoenfeld & Sons, Inc.* v. *United States,* 3 CIT 123 (1982).

However, if it is properly demonstrated that there are no material facts in issue, summary judgment becomes a proper, indeed, a desirable vehicle for resolution of the case. *Janex Corp.* v. *United States,* 80 Cust. Ct. 146, C.D. 4748 (1978); *L. Batlin & Son, Inc.* v. *United States,* 69 Cust. Ct. 14, C.D. 4365, 345 F. Supp. 996 (1972), aff'd., 61 CCPA 17, C.A.D. 1111, 487 F.2d 916 (1973); *Farr Man and Co.* v. *United States,* 4 CIT 55, 544 F. Supp. 908 (1982).

In the instant action the court finds, and the litigants agree, that there are no material facts in controversy. Indeed, Rule 56(i) of this court specifically states: "\* \* \* All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." What remains is a question of law, *viz.,* does the imported merchandise fall within the common meaning of the term tweezers as used in TSUS item 649.91, thereby being classifiable under its *eo nomine* designation of the term tweezers. It is well-settled that the common meaning of a tariff term is a question of law strictly to be decided by the court. *American Express Company* v. *United States,* 39 CCPA 8, C.A.D. 456 (1951). Reflecting upon this background it is apparent that this case is ripe for summary determination.

At the outset plaintiff states, and rightfully so, that the master rule of construction applicable to the proper interpretation of a statute is that the intent of Congress must be given effect, citing *United States* v. *Simon Saw and Steel Co.,* 51 CCPA 33, C.A.D. 834

(1964), and a host of other cases. It is, however, axiomatic that the primary source of discerning legislative intent is the statutory language itself, which is presumably used in its normal sense. *Andrus* v. *Allard,* 444 U.S. 51, (1979); *Shaw Industries, Inc.* v. *United States,* 4 CIT 188, 554 F. Supp. 1240 (1982), aff'd., 709 F.2d 46 (CAFC 1983). Where an ambiguity exists as to the intent of a statute or the common meaning of a tariff term, the courts may consult legislative history and other appropriate extrinsic aids to assist the court in resolving such ambiguity or common meaning. *United States* v. *Kung Chen Fur Corp.,* 38 CCPA 107, C.A.D. 447 (1951); *Schott Optical Glass, Inc.* v. *The United States,* 67 CCPA 32, C.A.D. 1239, 612 F.2d 1283 (1979). Legislative history may not be used to create an ambiguity when the language of the statute is plain and clear. *United States* v. *H. Rosenthal Co.,* 67 CCPA 8, C.A.D. 1236, 609 F.2d 999 (1979).

Examining the statutory language of TSUS item 649.91 it is evident that there is no ambiguity present. The term tweezers is specifically mentioned in the statute. The term tweezers is defined in *Webster's Third New International Dictionary* (3rd ed., 1963) as:

> Any of various small pincer-shaped tools used for plucking, holding, or manipulating (as for removing superfluous hair or handling watch parts)

See also, *United States* v. *R. F. Downing & Co.,* 17 CCPA 194, T.D. 43645 (1929), defining the term tweezers. The imported merchandise, "Tender Tweez", falls squarely within this definition. It is a cosmetic device used to maintain and shape eyebrows. This is borne out in paragraph 8 of plaintiff's statement of material facts which are not in dispute and in the affidavit of Mr. Thomas C. Comella, Senior Vice President of the Clairol Appliance Division, submitted in support of plaintiff's motion for summary judgment. Paragraph 4 of Mr. Comella's affidavit states: "The Tender Tweez is an electrically-operated cosmetic device which is used to maintain and shape eyebrows".

Plaintiff's main contention, however, is that it was the intent of Congress to exclude classification of electrically-powered articles under Schedule 6, Part 3, Subpart E. In support of its contention plaintiff cites the *Summaries of Tariff Information* 1948 (1948 Summaries), the *Tariff Classification Study* of 1960, *Summaries of Trade and Tariff Information* 1968 (1968 Summaries), and the *Brussels Tariff Nomenclature* (BTN).

In an attempt to justify its reference to these legislative aids plaintiff relies upon *United States* v. *J. E. Bernard Co.,* 42 CCPA 69, C.A.D. 574 (1954) and *Universal Transcontinental Corp.* v. *United States,* 40 CCPA 54, C.A.D. 497 (1952). Plaintiff's interpretation of these cases is misguided. When the CCPA stated that courts may refer to legislative aids and history even though there was no ambiguity in the language of the statute, it was referring to the premise that such reference was proper to *verify* the court's posi-

tion that there was no ambiguity present and to *exemplify* the validity of its original conclusion. The resort to such aids was not meant to be decisive nor used to create an ambiguity where none had previously existed.

In any event, briefly reviewing the legislative aids put forth by plaintiff it is evident that they do not bolster plaintiff's case whatsoever. In the first place, plaintiff's reliance on the *1968 Summaries* is misplaced. The *1968 Summaries* are no indication of legislative intent for a statute enacted in 1963 and therefore, are not suitable for use as evidence of congressional intent. *Hawaiian Motor Co.* v. *United States,* 67 CCPA 42, C.A.D. 1241, 617 F.2d 286 (1980); *Volkswagen of America, Inc.* v. *United States,* 68 Cust. Ct. 122, C.D. 4348, 340 F. Supp. 983 (1972), aff'd., 61 CCPA 41, C.A.D. 1115, 494 F.2d 703 (1974).

Plaintiff's reliance on the *Tariff Classification Study of 1960* proves nothing as to intent to omit electrically-operated articles from TSUS item 649.91. Plaintiff attempts to draw an inference that electrically-operated articles are not within the purview of Schedule 6, Part 3, Subpart E, because certain electrically-powered hand tools are specifically provided for in other parts of Schedule 6. However, tweezers are not specifically mentioned in these other parts or any other place in TSUS. Moreover, the statutory language of TSUS item 649.57 which falls squarely within Schedule 6, Part 3, Subpart E, specifically excluded appliances powered by electricity. Had Congress intended to exclude all electrically operated appliances from Schedule 6, Part 3, Subpart E, the specific exclusion found in TSUS item 649.57 would have been unnecessary. If anything, the *Tariff Classification Study of 1960* supports the classification by Customs. The wording of the *Classification Study* specifically states:

> *In general,* this subpart covers tools and implements which are used independently in the hand, but this subpart does not cover all such tools and implements (see parts 4 and 5 of schedule 6 for provisions which also cover *certain power-driven and other particular types* of hand tools), nor does it cover only such tools and implements. * * * (at 189) (emphasis supplied).

The language is clear. In using the term "in general" Congress could only have intended that Subpart E cover all household implements regardless of whether power-driven or not, unless specifically provided for elsewhere, as in *certain* power-driven and other *particular* types of hand tools.

The same is true of plaintiff's reliance on the *1948 Summaries.* Plaintiff attempts to draw an analogy between the Tariff Act of 1930 which provided for both electric and nonelectric versions of an article and TSUS by using section 357 of the Tariff Act of 1930 as an example. Section 357 covered hand, mechanical or electrical operation of a hand clipper while TSUS items 650.83 and 650.85 specifically exclude electrically-operated hand clippers. Once again, it

would have been unnecessary for Congress to specifically exclude electrically-operated appliances in a specific item in Subpart E if there had existed a general exclusion thereof.

Finally, plaintiff attempts to support its argument by comparing the Brussels Nomenclature with TSUS. This argument is likewise unconvincing. There is no specific statement that electrically-powered articles are excluded under Section XV, Chapter 82, of the Brussels Nomenclature. Indeed, where the BTN distinguishes between electric and non-electric items it so specifically states. For example, the explanatory notes to Chapter 82, heading 82.11 specifically excludes electric safety razors from classification under Chapter 82 and, the explanatory notes to heading 82.13 specifically distinguishes electric hair clippers from non-electric hair clippers. Had there been an intention of a general exclusion of electrically-powered articles it would have been unnecessary to distinguish specific items. This differentiation is also borne out in the *Alphabetical Index to the Goods Specified in the Brussels Nomenclature* (1955).

Comparing the standard non-electric household tweezer with "Tender Tweez" it is at once evident that both perform the basic depilating function. The fact that the imported merchandise is electrically powered does not obviate its basic function of removing hair. An invention subsequent to the enactment of a tariff law which improves or brings an article within the contemporary scientific realm but maintains the basic function of the original item does not remove said article from the original classification. Tariff acts are made for the future as well as the present, and tariff terms will embrace merchandise not known to commerce at the time of their enactment, provided the new article possesses an essential resemblance to the one named in the statute. *Klipstein & Co.* v. *United States,* 4 Ct. Cust. Appls. 510, T.D. 33936 (1913); *Smillie & Co.* v. *United States,* 12 Ct. Cust. Appls. 365, T.D. 40520 (1924); *United States* v. *Standard Surplus Sales, Inc.,* 69 CCPA 34, 667 F.2d 1011 (1981). New and improved models have been held classifiable under the *eo nomine* provisions as originally enacted. *Davies Turner & Co.* v. *United States,* 45 CCPA 39, C.A.D. 669 (1957).

A good example of the flexibility of tariff terms to embrace merchandise not known to commerce at the time of their enactment is found in *Kaysons Import Corp.* v. *United States,* 56 Cust. Ct. 146, C.D. 2622 (1966). The merchandise in that case was a hand-held, battery operated electric toothbrush. The court held that it was properly classifiable as a toothbrush, stating:

> * * * It is evident that the application of electrical operation to small articles in common use, such as brushes, is going to make them more complicated in structure. If the buyer gets, for better or for worse, a dose of gum massage with every utilization of the article, that is part of the gain he derives or price he pays for living in 1966. *The brush is still a brush.* The arti-

cle here, being known in common speech and to commerce as a toothbrush, is properly classifiable as such.

*Kaysons* at 152 (emphasis supplied).

Likewise, in *Fred Roberts Co.* v. *United States,* 46 Cust. Ct. 254, C.D. 2265 (1961), the court held that a hand-held battery operated shoe brush was properly classified as a brush and not as an article "* * * having as an essential feature an electrical element or device * * *"

These two cases strongly parallel this case. Here, we have the unambiguous *eo nomine* term "tweezer". All that has been added to the manually operated tweezer is a small electrically-powered motor. The merchandise is a hand-held electrically operated tweezer performing the function of a tweezer and nothing more. There is no language in the statute that limits classification of merchandise as a tweezer only to non-electrically operated tweezers. It is axiomatic that an *eo nomine* designation takes precedence over a general or basket type classification provision. *ITT Thompson Industries, Inc.,* v. *United States,* 3 CIT 36, 537 F. Supp. 1272, aff'd., 703 F.2d 585 (CAFC 1982).

The language being thus plain and unambiguous, the court is not permitted to limit its meaning by a sort of judicial legislation. The court would only be justified in restricting classification to manually non-electrically-powered tweezers by showing that, irrespective of the language used, the congressional intent was to so limit it. No such showing has been made here. Plaintiff, therefore, has failed to overcome the presumption of correctness that attaches to Customs' classifications. 28 USC § 2639(a)(1) (Supp. V); *Ideal Musical Merchandise Co.* v. *United States,* 84 Cust. Ct. 56, C.D. 4843 (1980); *Carling Electric Co.* v. *United States,* 7 CIT 303 (1984).

## CONCLUSION

Plaintiff has failed to show that it was the intent of Congress to limit TSUS item 649.91 to non-electrically-powered merchandise. The court finds no ambiguity in the definiton of the term tweezers or in the statutory wording of TSUS item 649.91. Reference to legislative history is therefore inappropriate as such reference by plaintiff merely serves to create, and not resolve, an ambiguity. The legislative history, if anything, tends to support defendant's position. Tariff acts are enacted for the future as well as for the present and embrace merchandise not known to commerce at the time of their enactment, provided the contemporary merchandise possesses an essential resemblance to the one named in the statute and performs the basic function of the original item.

As a presumption of correctness attaches to Customs' classification, and since plaintiff has not overcome said presumption on this case, the classification by the Customs Service at the Port of New York is, in all respects, affirmed.

Accordingly, plaintiff's motion for summary judgment is, in all respects, denied and, defendant's cross-motion for summary judgment is, in all respects, granted.